Keith D. CHAMPLAIN, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 65S00–9803–CR–157.

Supreme Court of Indiana.

Aug. 19, 1999.

William W. Gooden, Mt. Vernon, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

BOEHM, Justice.

Keith D. Champlain was convicted of murder and sentenced to fifty-five years imprisonment. His direct appeal presents the following issues:

(1) Did the trial court err in refusing to give Champlain's two tendered instructions relating to intoxication?

(2) Did the trial court err when it sentenced Champlain to an executed sentence of fifty-five years imprisonment?

We affirm the trial court.

### Factual and Procedural Background

Champlain was convicted of murder following a jury trial on October 6, 1995. This Court reversed Champlain's conviction and remanded for a new trial because of the failure to give a reckless homicide instruction. *See Champlain v. State*, 681 N.E.2d 696 (Ind.1997). On December 19, 1997, a jury again convicted Champlain of murder. He appeals. Because the evidence on retrial is somewhat different from that at the initial trial, we again summarize the facts.

On July 12, 1995, Sherri Reeves Vanlue, her two boys, and Justin Jamison were at Vanlue's mobile home in Mount Vernon, Indiana. Earlier in the evening, Champlain had threatened Vanlue, the boys, and Jamison in a phone call to Vanlue's brother's home. Champlain also made threatening phone calls to Vanlue's mobile home three times that evening before Vanlue took the phone off the hook and went to bed.

A short time after retiring, Vanlue and Jamison heard Champlain's Jeep approaching the mobile home. By the time Jamison had dressed, Champlain was beating on the door threatening to kill the occupants of the mobile home. Vanlue stood in front of the door and screamed at Champlain that "I am tired of this. I am calling the police." Champlain fired two shots through the door while Jamison called 911. One of these struck Vanlue in the right side of her chest. After firing the shots, Champlain kicked the door open and stuck the shotgun in Jamison's stomach, saying, "I am going to kill you." Jamison grabbed the barrel of the shotgun and a struggle ensued in which Champlain was thrown across the mobile home and lost his grip on the shotgun. Jamison then proceeded to kick Champlain until he was unconscious. Later when Champlain started to rise, Jamison hit him repeatedly in the head with the butt of the gun.

Three police officers arrived on the scene and ordered Jamison out of the mobile home. The officers found Champlain and Vanlue inside the mobile home. Champlain admitted to Detective Ricketts that he had shot Vanlue.[1] Vanlue was

---

**1.** The State and Champlain differed in their theories of how Vanlue was actually shot. The State claimed that Vanlue was shot through an opening or crack in the door based on testimony from an expert that the lack of deformity of the pellets indicated that they had not passed through any hard objects before striking Vanlue. Champlain, however,

pronounced dead from a shotgun wound to the right side of the chest. The parties stipulated that Champlain's blood alcohol level was .15% by weight of alcohol in his blood according to a whole blood test and .19% by weight of alcohol in his blood based on a serum blood test.

## I. Jury Instructions on Intoxication

Champlain asserts that the trial court committed reversible error when it refused to give his tendered instructions on intoxication. They read as follows:

### Instruction No. 1

Prima facie evidence of intoxication includes evidence that there was at least ten-hundredths percent (0.10%) by weight of alcohol in the person's blood. IC 9–13–2–131

### Instruction No. 2

Prima facie evidence is evidence which, standing alone, is sufficient to prove a proposition.

■ This Court reviews the refusal of a tendered instruction by examining whether the tendered instruction correctly stated the law, whether there was evidence in the record to support the giving of the instruction, and whether the substance of the tendered instruction was covered by other tendered instructions. *Nichols v. State,* 591 N.E.2d 134, 135–36 (Ind.1992). The trial court has discretion in the manner of instructing the jury and its ruling will not be reversed unless the instructions, when taken as a whole, misstate the law or mislead the jury. *Coleman v. State,* 703 N.E.2d 1022, 1032 (Ind.1998).

■ Although there was no other instruction on point, the refused instructions were not correct statements of the law applicable to this case and were properly refused. The first instruction dealt with the definition of "[p]rima facie evidence of intoxication" found in Indiana Code § 9–13–2–131, which relates to intoxication in motor vehicle violations. Indiana Code § 9–13–1–1 limits the applicability of the definitions in Title 9 to "this title," meaning Title 9 of the Indiana Code which deals exclusively with motor vehicles. Defenses to crimes and other criminal matters are addressed in Title 35 of the Indiana Code. At the time of the murder, Indiana Code § 35–41–3–5 allowed intoxication as a defense to a crime if it was involuntary or if it negated an essential element of the crime.[2] Because the intoxication definition for purposes of operating a motor vehicle applied exclusively to Title 9 and set forth a lower standard than the level of intoxication necessary to establish a defense to a Title 35 crime, it was a misleading statement of the law applicable to this case. Accordingly, the trial court did not err in refusing the tendered instructions.

## II. Sentencing

Champlain also contends that the trial court erred when it sentenced him to fifty-five years imprisonment. Champlain was tried and convicted in an earlier trial, but succeeded in gaining a reversal and new trial on appeal. *See Champlain,* 681 N.E.2d at 696. His original sentence was for a term of sixty-five years with twenty years suspended. There were several conditions of the probation, including that Champlain make restitution to Vanlue's

---

claimed that he shot Vanlue through the door based on the pathologist's testimony that the autopsy was not inconsistent with the fatal shot passing through the door.

2. Currently, Indiana Code § 35–41–3–5 states "[i]t is a defense that the person who engaged in the prohibited conduct did so while he was intoxicated, only if the intoxication resulted from the introduction of a substance into his body: (1) without his consent; or (2) when he

did not know that the substance might cause intoxication." However, at the time of the offense, Indiana Code § 35–41–3–5(b) read "[v]oluntary intoxication is a defense only to the extent that it negates an element of an offense referred to by the phrase 'with intent to' or 'with an intention to.'" This subsection of the Code was deleted in 1997. *See* Pub.L. No. 210–1997, § 4, 1997 Ind. Acts 2938.

children in the form of two $5,000 certificates of deposit. When Champlain failed to fund the certificates of deposit, the trial court revoked the suspended portion of his sentence, resulting in an executed sentence of sixty-five years. After the retrial, Champlain was sentenced to sixty-five years with ten years suspended. Champlain argues that the second sentence is in violation of the law because it is for a longer period of time than the original sentence, which he claims was wrongly modified.

■■■■ A defendant cannot be sentenced after a successful appeal of his conviction for more than the original sentence unless there are changed circumstances to support the modification. *North Carolina v. Pearce,* 395 U.S. 711, 723–26, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969);[3] *Smith v. State,* 695 N.E.2d 909, 911 (Ind.1998). Both the United States Supreme Court and this Court have held that increased sentences violate the Due Process Clause because they improperly deter defendants from pursuing their right of appeal.[4] Champlain claims that his current sentence of sixty-five years with ten years suspended is more than his original sentence of sixty-five years with twenty years suspended. However, the twenty year suspension was revoked before the retrial. If the revocation of the suspended sentence was correct, Champlain was sentenced to ten years less than his original sentence and there is no error in his new sentence.

Under Indiana Code § 35–38–2–2.3(a)(5), the court may require as a condition of probation that the defendant make restitution to the victim of the crime for resulting injuries: "the court shall fix the amount, which may not exceed an amount the person can or will be able to pay, and shall fix the manner of performance." Under Indiana Code § 35–38–2–3(f), "[p]robation may not be revoked for failure to comply with conditions of a sentence that imposes financial obligations on the person unless the person recklessly, knowingly, or intentionally fails to pay."

■■■■ In this case, the imposition of restitution as part of Champlain's suspended sentence was permissible under Indiana Code § 35–38–2–2.3(a)(5). In order to impose restitution, the trial court must consider the defendant's ability to pay which includes such factors as the defendant's financial information, health, and employment history. *See Antcliff v. State,* 688 N.E.2d 166, 170–71 (Ind.Ct.App.1997); *Mitchell v. State,* 559 N.E.2d 313, 314–15 (Ind.Ct.App.1990). The trial court specifically asked Champlain about his ability to pay and examined his assets at the time of sentencing. These included a retirement account, a 401(k) account, a home, and a Jeep. The trial court also questioned Champlain about his employment history at General Electric Plastics and his annual salary. This more than satisfied the conditions of the statute. Thus, the trial court

**3.** Originally, *Pearce* stood for the broad proposition that all increased sentences after reversal were presumptively vindictive. Subsequent cases have permitted an increased sentence to stand in some circumstances, but none applies here. *See Alabama v. Smith,* 490 U.S. 794, 801, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989) (greater sentence imposed after trial than after guilty plea not presumed vindictive); *Chaffin v. Stynchcombe,* 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973) (no presumption of vindictiveness where second jury imposes higher sentence than first jury); *Colten v. Kentucky,* 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972) (no presumption of vindictiveness where higher sentence is im-

posed by second court in a two-tier system after a de novo trial).

**4.** That is clearly not the case here, where Champlain's sentence was for sixty-five years at the time that this Court reversed his original conviction. Champlain's subsequent sentence of sixty-five years imprisonment with ten years suspended is for less time than his sentence at the time of reversal. *See Matter of Craig,* 571 N.E.2d 1326, 1328 (Ind.Ct.App. 1991) ("Due process is violated only when there is a realistic danger that the State might be retaliating against the accused for lawfully attacking his conviction.").

considered Champlain's ability to pay, and Champlain's answers supported the trial court's conclusion that restitution was appropriate.

■ The revocation of Champlain's suspended sentence was also proper under Indiana Code § 35–38–2–3(f). "If the probationer has willfully refused to pay or has failed to make a sufficient bona fide effort to acquire the resources to pay, the court may revoke probation and sentence the defendant to prison." *Bahr v. State*, 634 N.E.2d 543, 545 (Ind.Ct.App.1994) (citing *Bearden v. Georgia*, 461 U.S. 660, 672–73, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983)). At the revocation hearing, the trial court specifically asked Champlain if he had made any effort to fund the certificates of deposit for the two boys. Champlain admitted that he had not done so. At the time of the revocation hearing, Champlain still had $6,000 in his retirement fund which could have been used as partial repayment of his restitution. Furthermore, Champlain had given his house and possessions to his parents, rather than attempting to sell them to fund the certificates of deposit.

■ Probation may be revoked at any time for a violation of its terms. This includes revocation prior to the start of probation. *See Childers v. State*, 656 N.E.2d 514, 516–18 (Ind.Ct.App.1995); *Johnson v. State*, 606 N.E.2d 881, 882 (Ind. Ct.App.1993); *see also* IND.CODE §§ 35–38–2–1 & 35–38–2–3 (1998). In this case, Champlain had sufficient assets at the time of sentencing to support the trial court's order of restitution. Champlain's failure to make restitution rose to the level of a reckless, if not willful, failure to pay. Accordingly, the revocation of his suspended sentence was warranted.

Because the revocation of Champlain's original suspended sentence was proper, the sentence imposed following his retrial was also proper. His current sentence of sixty-five years imprisonment with ten years suspended is less than the original executed sentence of sixty-five years.

Thus, there is no sentencing error by the trial court.

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN, and SELBY, JJ., concur.