ATTORNEY FOR APPELLANT
Robert D. King, Jr.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General of Indiana

Richard C. Webster
Deputy Attorney General
Indianapolis, Indiana



FILED
Aug 27 2008, 11:11 am

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 49S04-0808-CR-469

BRIAN WOODS,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Marion Superior Court, Criminal Division Room 20
No. 49G20-0203-FA-072222
The Honorable William Young, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 49A04-0612-CR-748

**August 27, 2008**

**Rucker, Justice.**

**Facts and Procedural History**

On March 19, 2002, Brian Woods was charged in a seven count Information with various drug related offenses. Under terms of an agreement, Woods pleaded guilty to two of the seven counts: conspiracy to commit dealing in cocaine as a Class A felony and dealing in marijuana as a Class D felony. In exchange for his plea, the State dismissed the remaining counts and Woods was sentenced to a total term of twenty years with five years executed and fifteen years suspended. Woods was placed on probation for 730 days following his release from the Department of Correction.

On December 28, 2005, the State filed a Notice of Probation Violation alleging that Woods had failed to submit to a urinalysis drug test, failed a urinalysis drug test, and failed to pay in full court ordered fees.

A probation revocation hearing was scheduled for January 19, 2006. At the start of the hearing the parties informed the trial court that they had reached an agreement. Under which, Woods would admit to the violations as alleged. In exchange his probation would be extended for one year, Woods would enter a drug treatment program, and he would be tested weekly for drug use. Woods also would be placed on what the parties referred to as "strict compliance," which the deputy prosecutor explained as meaning "[any] other violation of any terms or conditions of his probation will result in full backup of 15 years." Tr. at 4. When the trial court asked Woods if he knew what "strict compliance" meant, he responded "[y]es sir" and the trial judge emphasized, "You'll go to jail if you don't do what you're supposed to do [in] the slightest, that's 15 years in your case . . . ." Id. The trial court entered an appropriate order, and Woods' probation was extended until January 14, 2007.

On October 30, 2006, the State filed a second Notice of Probation Violation, this time alleging Woods failed to report for urinalysis drug testing on three separate occasions, failed to report as directed to the probation department, and failed to make a good-faith effort to pay court ordered fees. At a revocation hearing held November 30, 2006, the trial court inquired about the status of the case. The deputy prosecutor responded that in the event the trial court found a

2

probation violation, Woods faced 15 years – the remainder of his term.  As a consequence, the deputy prosecutor advised the court, "I've agreed to offer him 12 years . . . ."  Tr. at 8.  At that point, addressing the court Woods replied,  "Can I explain why I missed sir?"  Id.  The following exchange then occurred:

> The Court: No because it doesn't matter, because you're on strict compliance you weren't allowed to miss remember?
>
> Mr. Woods: Yes.
>
> The Court: So do you want the 12 or not?
>
> Mr. Woods: I guess I've got to take it.
>
> The Court: You don't have to but you wouldn't do to[o] well if you didn't.
>
> Mr. Woods: Yeah.
>
> The Court: You don't want 15 I know that right?
>
> Mr. Woods: No I don't.
>
> The Court: So 12 years, 28 days credit indigent as to fines costs and fees.

Tr. at 9.  The trial court entered an order accordingly.[1]  Woods appealed complaining the court denied him due process by preventing him from explaining why he violated the terms of probation.  The Court of Appeals affirmed the judgment of the trial court deciding in part that because of the strict compliance, "Woods's situation is akin to one in which a fact-finder has no discretion to continue probation."  Woods v. State, 877 N.E.2d 188, 190 (Ind. Ct. App. 2007) (footnote omitted).  We grant transfer and affirm the trial court's judgment, but on grounds different from our colleagues.

---

[1] Although the trial court made no specific finding that Woods violated the terms of his probation, Woods' acknowledgment that he "missed" was an apparent reference to his failure to report for urinalysis testing.  In any event, Woods makes no claim on appeal that he did not violate the terms of probation or that the evidence was not sufficient to support a violation.

## Standard of Review

The decision to revoke probation is within the sole discretion of the trial court. <u>Reyes v. State</u>, 868 N.E.2d 438, 440 (Ind. 2007). And its decision is reviewed on appeal for abuse of that discretion. <u>Prewitt v. State</u>, 878 N.E.2d 184, 188 (Ind. 2007). On review, we consider only the evidence most favorable to the judgment without reweighing that evidence or judging the credibility of the witnesses. <u>Braxton v. State</u>, 651 N.E.2d 268, 270 (Ind. 1995). If there is substantial evidence of probative value to support the trial court's decision that a defendant has violated any terms of probation, the reviewing court will affirm its decision to revoke probation. <u>Id.</u>

## Discussion

Woods contends the trial court's refusal to allow him the opportunity to explain why he violated the terms of his probation denied him minimum due process. The State responds that no such opportunity was required because Woods was placed on "strict compliance." According to the State no explanation would have mattered because "any" violation would have resulted in the trial court imposing the full outstanding term of Woods' sentence.[2] Br. of Appellee at 6.

Although probationers are not entitled to the full array of constitutional rights afforded defendants at trial, "the Due Process Clause of the Fourteenth Amendment [does] impose [] procedural and substantive limits on the revocation of the conditional liberty created by probation." <u>Debro v. State</u>, 821 N.E.2d 367, 374 (Ind. 2005) (citing <u>Cox v. State</u>, 706 N.E.2d 547, 549 (Ind. 1999); <u>Black v. Romano</u>, 471 U.S. 606, 610 (1985)). The minimum requirements of due process that inure to a probationer at a revocation hearing include: (a) written notice of the claimed violations of probation; (b) disclosure of the evidence against him; (c) an opportunity to

---

[2] The State also argues that "[t]he trial court did not deny Defendant due process because he agreed to 'strict compliance.'" Br. of Appellee at 6. Although it does not say so in express terms the State apparently analogizes the acceptance of strict compliance with that of entering a plea agreement. <u>Creech v. State</u>, 887 N.E.2d 73, 74 (Ind. 2008) (Defendants who bargain to plead guilty in return for favorable outcomes "give up a plethora of substantive claims and procedural rights."). We reject this comparison. A defendant who enters a plea agreement knowingly, intelligently, and voluntarily is hardly similarly situated to a defendant who is advised in essence either agree to strict compliance or go to jail now for violating probation.

be heard and present evidence; (d) the right to confront and cross-examine adverse witnesses; and (e) a neutral and detached hearing body. Isaac v. State, 605 N.E.2d 144, 148 (Ind. 1992).

Probation revocation is a two-step process. First, the court must make a factual determination that a violation of a condition of probation actually occurred. If a violation is proven, then the trial court must determine if the violation warrants revocation of the probation. Morrissey v. Brewer, 408 U.S. 471, 479-80 (1972); Stephens v. State, 818 N.E.2d 936, 941-42 (Ind. 2004) (observing the statutory scheme "reflects the Legislature's intent that trial courts have the flexibility both to use and to terminate probation when appropriate"). Indiana has codified the due process requirements of Morrissey in Indiana Code section 35-38-2-3 by requiring that an evidentiary hearing be held on the revocation and providing for confrontation and cross-examination of witnesses by the probationer. When a probationer admits to the violations, the procedural safeguards of Morrissey and the evidentiary hearing are unnecessary. Instead, the court can proceed to the second step of the inquiry and determine whether the violation warrants revocation. Morrissey, 408 U.S. at 480. However, even a probationer who admits the allegations against him must still be given an opportunity to offer mitigating evidence suggesting that the violation does not warrant revocation. United States v. Holland, 850 F.2d 1048, 1051 (5th Cir. 1988) (per curiam).

We first observe that our research reveals no reported decision examining the concept or exploring the implications of strict compliance probation. In one sense all probation requires "strict compliance." That is to say probation is a matter of grace. Prewitt, 878 N.E.2d at 188. And once the trial court extends this grace and sets its terms and conditions, the probationer is expected to comply with them strictly. If the probationer fails to do so, then a violation has occurred. But even in the face of a probation violation the trial court may nonetheless exercise its discretion in deciding whether to revoke probation. Clark County Council v. Donahue, 873 N.E.2d 1038, 1039 (Ind. 2007) ("Indiana trial court judges have the authority to award, supervise, and revoke probation. The probationary scheme is deliberately designed to give trial judges the flexibility to make quick, case-by-case determinations.").

In any event the very notion that violation of a probationary term will result in revocation no matter the reason is constitutionally suspect. For example, failure to pay a probation user fee where the probationer has no ability to pay certainly cannot result in a probation revocation. See, e.g., Black, 471 U.S. at 614 (No automatic revocation "[w]here a fine or restitution is imposed as a condition of probation, and 'the probationer has made all reasonable efforts to pay . . . yet cannot do so through no fault of his own.'") (internal quotations omitted); see also Morrissey, 408 U.S. at 488 (Discussing the minimum due process requirements at a parole revocation hearing the Court declared, "The parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation."). And what of a probationer not reporting to his probation officer because he was in a coma in a hospital? Or consider a failed urinalysis test because of prescription medication a probationer is taking on orders from his treating physician. Although not a defense to revocation, lack of volition is often a factor pertinent to a disposition in a revocation proceeding. United States v. Warner, 830 F.2d 651, 657-58 (7th Cir. 1987) ("While good faith and lack of willfulness does not preclude finding a probation violation, defendant could and did raise his alleged good faith before the court as a factor for the court to consider in deciding whether to revoke probation."); see also State v. Johnson, 514 P.2d 1073, 1076 (Wash. Ct. App. 1973) (Fundamental fairness required the trial court to consider whether the probationer was insane at the time the alleged violations occurred, not as a defense to the alleged violations, but to make it possible for the trial court to have all the information necessary to make the judgment justice demands.).

We acknowledge that telling a defendant that he is on "strict compliance" is a dramatic way of putting him on notice that he is on a short leash and has been given one final chance to "get his act together." Nonetheless due process requires that a defendant be given the opportunity to explain why even this final chance is deserving of further consideration. By denying Woods this opportunity, the trial court erred. However, on this record Woods is not entitled to relief.

To reverse a trial court's decision to exclude evidence, there must have been error by the court that affected the defendant's substantial rights *and* the defendant must have made an offer

6

of proof or the evidence must have been clear from the context.  <u>Stroud v. State</u>, 809 N.E.2d 274, 283 (Ind. 2004).  "This offer to prove is necessary to enable both the trial court and the appellate court to determine the admissibility of the testimony and the prejudice which might result if the evidence is excluded."  <u>Wiseheart v. State</u>, 491 N.E.2d 985, 991 (Ind. 1986).  The purpose of an offer of proof is to convey the point of the witness's testimony and provide the trial judge the opportunity to reconsider the evidentiary ruling.  <u>State v. Wilson</u>, 836 N.E.2d 407, 409 (Ind. 2005).  Equally important, it preserves the issue for review by the appellate court.  <u>Id.</u>

Neither on direct appeal nor on transfer to this Court does Woods make any attempt to explain why he violated the terms of his probation.  More importantly, Woods did not make an offer of proof to the trial court.  Generally this failure is fatal to his claim.  <u>Wisehart</u>, 491 N.E.2d at 991, <u>cf.</u> <u>Biddinger v. State</u>, 868 N.E.2d 407, 412-13 (Ind. 2007) (addressing contention that trial court erred in denying defendant opportunity to make a statement in allocution where claim preserved by written statement submitted as an offer of proof).  <u>See also</u> <u>United States v. Leasure</u>, 122 F.3d 837, 841 (9th Cir. 1997) (holding resentencing inappropriate unless the defendant can identify specific statements on appeal that he would have made at sentencing that likely would have impacted his sentence); <u>Neff v. State</u>, 696 S.W.2d 736, 740 (Ark. 1985) (Where the right of allocution is completely ignored by the court, a defendant must affirmatively prove prejudice after a proper objection in the trial court.).

**Conclusion**

We affirm the judgment of the trial court.

Shepard, C.J., and Dickson, Sullivan and Boehm, JJ., concur.

7