**Casimir SZPUNAR, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–0812–CR–1136.

Court of Appeals of Indiana.

July 16, 2009.

Publication Ordered Sept. 17, 2009.

Anna Onaitis Holden, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Casimir Szpunar ("Szpunar") appeals the revocation of his probation. We reverse.

### Issue

Szpunar raises one issue, which we restate as whether the trial court abused its discretion in revoking Szpunar's probation.

**1.** Ind.Code §§ 23–2–1–3 and –12. Indiana Code Chapter 23–2–1 was repealed and re-

### Facts and Procedural History

In 1996 and 1997, Szpunar bilked investors of $1,387,550. In 1999, the State filed a seventy-eight-count information against Szpunar and two accomplices. He pled guilty on February 22, 2002 to two Class C felonies—Securities Fraud and Sale of an Unregistered Security.[1] Twenty-seven months later, on May 28, 2004, the trial court entered judgments of conviction, held a sentencing hearing, and sentenced Szpunar to two concurrent terms of five years, with one year executed and four years suspended to probation on each.

For Szpunar's probation, the trial court ordered him to perform 250 hours of community service, "maintain employment (40 hours a week), cooperate with State, ½ of after tax income paid towards restitution." Appendix at 134 (parenthesis in original). It entered twenty-four restitution orders, one per victim, ranging from $5,000 to $324,000 and totaling $1,387,550. Szpunar's payment plan required him to pay $22,000 per month. In a 2005 entry in its Chronological Case Summary, the trial court noted, "[r]estitution is a term of probation. Every effort should be made to collect restitution, however, absent a wind fall I do not expect full restitution to be paid before discharge." *Id.* at 53.

On September 29, 2006, the State filed a notice of probation violation, alleging that Szpunar failed to provide verification of full-time employment and failed to make a good faith effort toward paying restitution. In a hearing, Szpunar stated that he was working for his criminal defense attorney, Dean Knapp ("Knapp"). The trial court found no violation of probation.

The State filed another notice of probation violation on April 9, 2007, alleging that Szpunar failed to maintain full-time em-

placed by the Uniform Securities Act. 2007 Ind. Acts P.L. 27–2007, Sec. 37.

ployment. Knapp informed the trial court that Szpunar had performed paralegal duties for Knapp until April 2, 2007. Regarding the difficulty to find employment, Szpunar testified,

> A lot of it has to do with having two felony convictions and my health hasn't really been good since I was in prison as well, but I've interviewed for a lot of jobs, many jobs and when I tell them about my background, which I feel I should, they just hang up the phone and don't call me.

Transcript at 10. Szpunar asserted that he was months behind on his rent; he complained of having injured his back by falling down a flight of stairs and stated that he was still recovering from "a real bad viral infection." *Id.* at 12. Finally, he testified that he had just begun working for an automobile advertising firm. The trial court found no violation, but ordered Szpunar to provide proof of employment, income, and expenses at a compliance hearing in June 2007.

Szpunar failed to appear for the hearing. Knapp told the trial court that his client had been in Cleveland on a business trip. The trial court issued a warrant for Szpunar's arrest, but made no finding whether he had violated the terms of his probation. After the probationer's arrest, the trial court ordered him to complete payment of a $5000 restitution order from another conviction.[2] He apparently did so—paying $595.98 to the Marion County Probation Department on July 2, 2007.

Four days after receiving that payment, the State filed an additional notice of probation violation on July 6, 2007. In a brief hearing on September 10, 2007, the probation department stated that Szpunar was complying with the probation order; ac-cordingly, the trial court found no violation.

Szpunar suffered a heart attack on approximately November 23, 2007. On November 30, 2007, he had coronary double-bypass surgery.

At a status hearing on February 25, 2008, the trial court admitted into evidence a note from a physician with Clarian Health Partners, stating, "Casimir Szpunar may return to work full-time with no restrictions on April 7, 2008." Exhibits at 2. Szpunar's probation officer, Shelly Fifer ("Fifer"), remarked that she had "been doing home visits to count as his office visits since he's been unable to come into our office." Tr. at 29. The trial court scheduled a follow-up status hearing to occur four months later, on June 30, 2008.

Eleven days before the hearing, Szpunar started a headlight-repair business. At that hearing, Fifer stated that Szpunar, "had some medical issues over the last few months so he has been unable to work so no payments have been made since ... February 25[, 2008]." *Id.* at 73. She added that he had started his own business. Knapp reported that his client had been diagnosed with pancreas and thyroid problems, as well as a possibility that he might have diabetes.

In a hearing on September 29, 2008, the probation department stated that Szpunar had paid only $120 in restitution since the previous hearing, but that he was compliant with reporting and all other standard conditions of probation. Szpunar testified that his health issues, including diabetes, high blood pressure, recovery from heart surgery, and medications for pancreas problems had caused him to lack energy.

---

**2.** *See Szpunar v. State,* 783 N.E.2d 1213 (Ind. Ct.App.2003) (regarding Cause Number 49G03–0106–CF–126676). It appears that Szpunar paid $5000 in restitution for the earlier two convictions.

He stated, "I try to go to work every day. I've been working at auto dealerships and restoring headlights. . . ." *Id.* at 81. The trial court commented, "$1.39 million. Those are big headlights." *Id.* at 83. It then scheduled an evidentiary hearing for November 24, 2008 and added,

> Court: That's the Monday before Thanksgiving. Hopefully by then the Colts will have strung together a few wins and I will be in a better frame of mind. This case has stretched on far too long, Mr. Szpunar. Mr. Knapp has requested numerous continuances and created for you several opportunities to make a better effort toward payment of your restitution. $124, is that correct?
>
> Fifer: $120.
>
> Court: $120, okay, $120 is a pathetic effort, Mr. Szpunar, and if in the next couple of months significant progress is not made, there's a very good chance that you will be sharing Thanksgiving dinner with gentlemen who are dressed in orange.

*Id.* at 84. The next day, the State auctioned a watch owned by Szpunar, generating $179. Szpunar made a payment on October 6, 2008, bringing the total restitution on the instant case to $464, including the sale of the watch.

Beginning on October 23, 2008, Szpunar had four appointments with a board-certified counselor, Brenda Lycan ("Lycan"). Upon Lycan's advice, Szpunar's family took him to the St. Vincent Stress Center on November 13, 2008, where he received in-patient treatment for a week. The day after his release, Szpunar moved for a continuance of the compliance hearing. Attached was a note from his psychiatrist, Dr. Sanjay Mishra, M.D., who wrote,

I would urge the legal system to take into consideration his various medical and mental health concerns and try to continue to manage these issues on an out-patient basis. I would be quite concerned if he were to face incarceration again as it would place both his physical and mental health in grave danger.

App. at 205.

As the compliance hearing began, Szpunar's motion to continue was immediately withdrawn. The State presented one witness, Fifer, while Szpunar called two people to testify: Lycan and his wife, Anita Szpunar ("Anita"). Fifer testified very briefly that Szpunar had finished paying restitution for another conviction and that he paid only $464 in restitution in the instant case. However, she acknowledged that he was complying with all other conditions of his probation. She observed that he had started his own windshield-repair business, called Better View, Incorporated. Anita and Lycan testified that Szpunar was suicidal, that his efforts to work were genuine, and that his cognitive function was compromised by his taking eight prescribed medications.

After hearing argument, the trial court commented as follows:

I have been very patient with Mr. Szpunar. . . . Mr. Szpunar was given additional time because the dollar amount that he owes is so incredibly high. On that same day a younger felon had his probation revoked and that young man owed less than $2000 in restitution.[3] He had also spent more time in prison as a result of a nominal forgery than Mr. Szpunar spent with his $1,390,000 in restitution. I mention this because I don't want the record to appear that Mr. Szpunar's fate was lightly decided. This court's expectations were Mr. Szpunar

---

**3.** Szpunar was age fifty-nine at the time of his revocation hearing.

would take advantage of the opportunities presented him in the time purchased on Mr. Knapp's good faith and would make a good faith effort to make payments on his restitution. What I have heard today is that Mr. Szpunar sought jobs that were acceptable to him and encounters difficulties because he feels that he has failed. With all due respect to Ms. Lycan, Mr. Szpunar's self-esteem is not as a great a concern to me as the welfare of the victims whose interests have been delayed and delayed and delayed. Notice of violation filed July 6, 2007 alleged that Mr. Szpunar was in violation of probation having failed to maintain full-time employment, having failed to make good faith effort toward payment of his fees and restitution. In the last year and a half, Mr. Szpunar has paid approximately $400 over and above what had been paid when the notice of violation was first filed. His total payments represent 0.0003% of the amount due and owing on his restitution order. I daresay, Mr. Szpunar, that had you walked around the City–County Building collecting spare change, scrap metal and cans, you could have generated more income than you paid toward your restitution.... [Y]our criminal acts took from your victims an immense amount and *I do not find that you have made a substantial effort despite all of the opportunities afforded you through these many months. Taking all issues into account I find that Mr. Szpunar is in violation of his probation.*

Tr. at 127–29 (emphasis added). On this basis, the trial court ordered Szpunar to execute the balance of his previously-suspended sentence—two concurrent four-year terms.

Szpunar now appeals the revocation of his probation.

## Discussion and Decision

### I. *Standard of Review*

We review a trial court's revocation of probation for an abuse of discretion. *Woods v. State,* 892 N.E.2d 637, 639 (Ind. 2008). In doing so, we consider only the evidence most favorable to the judgment without reweighing that evidence or judging the credibility of the witnesses. *Id.* If there is substantial evidence of probative value to support the trial court's decision that a defendant has violated a term of probation, we will affirm its decision to revoke probation. *Id.* at 639–40.

### II. *Analysis*

A court may make restitution a condition of a person's probation. Ind. Code § 35–38–2–2.3(a)(5). However, the amount may not exceed what the probationer can or will be able to pay. *Id.* In determining the amount of restitution, "the trial court must consider the defendant's ability to pay which includes such factors as the defendant's financial information, health, and employment history." *Champlain v. State,* 717 N.E.2d 567, 570 (Ind. 1999).

"Probation may not be revoked for failure to comply with conditions of a sentence that imposes financial obligations on the person unless the person recklessly, knowingly, or intentionally fails to pay." Ind. Code § 35–38–2–3(f). The State must prove a probation violation by a preponderance of the evidence. Ind.Code § 35–38–2–3(e).

In determining whether to revoke probation, the court must first make a factual determination that a violation occurred. *Woods,* 892 N.E.2d at 640. If so, the trial court must then determine whether the violation warrants revocation of the probation. *Id.* Szpunar acknowledges that he was not complying with his payment

plan, but asserts that his non-compliance was not willful.

The United States Supreme Court considered a much smaller restitution amount in *Bearden v. Georgia*, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983). A condition of Bearden's probation was that he pay $750 within four months. He borrowed money to pay the first $200, but was laid off one month into his probation. Illiterate and holding only a ninth grade education, he was unable to find another job, despite repeated efforts. His probation was revoked for failure to pay timely the remaining $550.

The *Bearden* Court reversed the revocation, concluding that it violated Bearden's Fourteenth Amendment Due Process rights. *Id.* at 662. Noting its long-held "sensitiv[ity] to the treatment of indigents in our criminal justice system," the *Bearden* Court held as follows:

> [I]n revocation proceedings for failure to pay a fine or restitution, *a sentencing court must inquire into the reasons for the failure to pay.* If the probationer willfully refused to pay or *failed to make sufficient bona fide efforts legally to acquire the resources to pay,* the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority. If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternate measures of punishment other than imprisonment. Only if alternate measures are not adequate to meet the State's interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay. To do otherwise would deprive the probationer of his conditional freedom simply because, through no fault of his own, he cannot pay the fine. Such a depriva-

tion would be contrary to the fundamental fairness required by the Fourteenth Amendment.

*Id.* at 664, 672–73 (emphasis added). As examples of alternative means to punish and deter lawbreaking, the *Bearden* Court noted that, "the sentencing court could extend the time for making payments, or reduce the fine, or direct that the probationer perform some form of labor or public service in lieu of the fine." *Id.* at 672.

Last year, our Supreme Court considered a probation revocation in which the trial court refused to hear the defendant's evidence explaining his conduct. *Woods,* 892 N.E.2d 637. In anticipation of a hearing on an alleged violation, the State and the probationer reached an agreement providing that he was on "strict compliance" and that any additional violation of his probation would result in the execution of his fifteen-year suspended sentence. Later, the State alleged that Woods failed to report for three urinalysis tests, failed to report to the probation department, and "failed to make a good-faith effort to pay court ordered fees." *Id.* at 639. In the hearing, Woods asked, "Can I explain why I missed sir?" *Id.* The trial court replied, "No because it doesn't matter, because you're on strict compliance." *Id.* Our Supreme Court analyzed the matter as follows:

> [T]he very notion that violation of a probationary term will result in revocation no matter the reason is constitutionally suspect. For example, failure to pay a probation user fee where the probationer has no ability to pay certainly cannot result in a probation revocation. . . .

> We acknowledge that telling a defendant that he is on "strict compliance" is a dramatic way of putting him on notice that he is on a short leash and has been given one final chance to "get his act

together." Nonetheless due process requires that a defendant be given the opportunity to explain why even this final chance is deserving of further consideration. By denying Woods this opportunity, the trial court erred.

*Id.* at 641.[4]

Similarly, this Court reversed a probation order where the trial court did not inquire into the delinquent's ability to pay. *M.L. v. State,* 838 N.E.2d 525, 530 (Ind.Ct. App.2005), *trans. denied.* We also reversed the State's decision to offer pretrial diversion only if the accused could pay a $230 fee. *Mueller v. State,* 837 N.E.2d 198, 205–06 (Ind.Ct.App.2005).

In contrast, the Seventh Circuit and Indiana appellate courts have affirmed probation revocations where the probationer effectively refused to comply with the restitution order. The Seventh Circuit affirmed a revocation, concluding that the probationer had willfully refused to pay $45 in court costs; he paid $6 in fifteen months. *U.S. v. Warner,* 830 F.2d 651, 658 (7th Cir.1987). Furthermore, the district court had found that the probationer, "anticipating that he would be returning to jail, did not seek employment after the court issued its order to show cause." *Id.* Indiana appellate courts have affirmed probation revocations where: (1) the probationer gave his house and other property to his parents, held a $6000 retirement fund, and admitted that he made no effort to pay restitution; (2) the trial court found that the probationer "was indigent by choice because he chose to violate the law" during his release; and (3) the probationer agreed to and represented that he could pay $537 per month in restitution, but paid only $338 in twenty-three months despite inheriting approximately $5000 worth of

real estate. *See respectively Champlain,* 717 N.E.2d at 571; *Barnes v. State,* 676 N.E.2d 764, 765 (Ind.Ct.App.1997); and *Bahr v. State,* 634 N.E.2d 543, 545 (Ind.Ct. App.1994).

■ Here, the State's sole witness testified simply that Szpunar made very little restitution, $464. The trial court ultimately stated, "I do not find that you have made a substantial effort despite all of the opportunities afforded you through these many months. Taking all issues into account I find that Mr. Szpunar is in violation of his probation." Tr. at 129.

■ "[F]ailure to pay a probation user fee where the probationer has no ability to pay certainly cannot result in a probation revocation." *Woods,* 892 N.E.2d at 641. As noted above, a defendant's ability to pay is based upon such factors as his financial information, health, and employment history. *Champlain,* 717 N.E.2d at 570. The State had the burden of proof, but presented no evidence regarding Szpunar's ability to pay. Indeed, the State's evidence did not address: (1) the fact that the probation department deemed Szpunar compliant in a status hearing on September 10, 2007; (2) his heart attack and surgery in November 2007; (3) Fifer's acknowledgement in a hearing on June 30, 2008 that Szpunar had "been unable to work"; or (4) the fact that Szpunar had been released from the St. Vincent Stress Center just four days earlier. *Id.* at 73. The trial court abused its discretion in revoking Szpunar's probation.

Reversed.

DARDEN, J., and ROBB, J., concur.

---

4. The *Woods* Court affirmed the probation revocation because Woods failed to make an offer of proof regarding why he violated probation. *Woods v. State,* 892 N.E.2d 637, 642 (Ind.2008).

*ORDER*

Appellant, by counsel, has filed a Verified Motion to Publish.

Having reviewed the matter, the Court FINDS AND ORDERS AS FOLLOWS:

1. Appellant's Verified Motion to Publish is GRANTED. This Court's opinion handed down in this cause on July 16, 2009, marked Memorandum Decision, Not for Publication is now Ordered Published.

DARDEN, BAILEY, ROBB, JJ., concur.