Troy R. SMITH, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 35A02–1008–CR–996.

Court of Appeals of Indiana.

March 23, 2011.

Transfer Granted June 22, 2011.

Matthew G. Grantham, Bowers, Brewer, Garrett & Wiley, LLP, Huntington, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Angela N. Sanchez, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Chief Judge.

*Case Summary and Issues*

Troy R. Smith appeals the trial court's revocation of his probation for failure to pay child support weekly, a condition of his probation. On appeal, he raises one issue which we restate as two: whether the State satisfied its burden, if any, to prove 1) Smith's failure to pay was reckless, knowing, or intentional; or 2) his ability to pay. Concluding the State bears the burden to prove Smith recklessly, knowingly, or intentionally failed to pay his child sup-

port weekly, that proving such requires Smith's ability to pay, and that the State failed to satisfy its burden, we reverse.

*Facts and Procedural History* [1]

On May 22, 2007, Smith pleaded guilty to non-support of a dependent child, a Class D felony, and on June 26, 2007, he received a three-year prison sentence that was suspended on the probationary condition that he pay child support weekly. His child support obligation at that time was $78.79 per week.

For the period of June 26, 2007 to November 23, 2008, Smith remained current in his payments and also made payments toward his arrearage, paying $114.79 weekly. A trial court increased his child support obligation in late November 2008 to $124 per week. After the modification, Smith continued to pay in the same amount, $114.79 per week. The record is unclear as to whether he received notice of the increase and when his payments ceased to be automatically deducted from his paychecks. Neither his notice of an increase nor the consciousness of his payment were issues at the revocation hearing and are not issues on appeal. His payments were sparse from April to July 2009 and were consistent for the last time in August and September 2009.

At some point Smith began to make payments deliberately—that is, not via automatic deductions from his paycheck or tax intercepts. Smith's payment history reveals his account was credited with at least two tax intercepts, valued at $1,520 and $1,054. And aside from the consistent payments of $114.79 when he should have been paying $124, his payment history includes other partial payments as well. For example, he made one payment of $15

---

1. We heard oral argument on February 16, 2011 in Indianapolis, Indiana, and thank counsel for their advocacy.

and several of about $40 in May 2009, September 2009, and his final payment on December 16, 2009.

On March 8, 2010, Smith's probation officer filed a petition to revoke Smith's probation for failure to make his payments weekly, and on August 10, 2010, the trial court held an evidentiary hearing.

At the August 10, 2010 hearing, Smith did not explicitly admit he had fallen behind in his payments. *Cf.* Appellant's Brief at 9 ("Smith did not dispute that he had not paid his support...."). Rather, he explained his several serious health conditions and treatments, including back surgery, which led to loss of his job as a truck driver in August 2009. He received the majority, if not all, of these medical treatments at a free health clinic. Smith also testified he had no other source of income, from August 2009 to August 2010 he submitted approximately seventy-five job applications to no avail, he had no health insurance, and he was seeking disability benefits. According to his medical records entered into evidence, some of his health problems began prior to him losing his job and continued long after. At the hearing, Smith and the State addressed the extent to which his health affected his ability to seek or secure an income, but only after he lost his job. Neither the State nor Smith explicitly addressed his ability to pay or the extent to which his health may have affected his ability to pay prior to losing his job.

The trial court concluded that even if Smith lost his job in August 2009 and subsequently had no other income as he claimed, his failure to make regular payments while employed from April 2009 to August 2009 was sufficient to revoke his probation. The trial court revoked his probation and imposed the balance of his three-year prison sentence. Smith now appeals.

*Discussion and Decision*

### I. Standard of Review

 "Probation is a criminal sanction wherein a convicted defendant specifically agrees to accept conditions upon his behavior in lieu of imprisonment." *Abernathy v. State,* 852 N.E.2d 1016, 1020 (Ind. Ct.App.2006). Trial courts grant probation and set conditions, and may revoke it if those conditions are violated. *Id.*

Because revocation of probation is in the nature of a civil proceeding, the State must prove an alleged violation only by a preponderance of the evidence. Ind.Code § 35–38–2–3(e). On appeal we do not reweigh the evidence or judge the credibility of witnesses, and we look only to the evidence that supports the judgment and any reasonable inferences flowing therefrom. *Baxter v. State,* 774 N.E.2d 1037, 1044 (Ind.Ct.App.2002), *trans. denied.*

 We review a trial court's decisions in a probation revocation proceeding for an abuse of discretion. *Woods v. State,* 892 N.E.2d 637, 639 (Ind.2008). An abuse of discretion occurs if the decision misinterprets the law or is against the logic and effect of the facts and circumstances before the trial court. *State v. Cozart,* 897 N.E.2d 478, 483 (Ind.2008); *Prewitt v. State,* 878 N.E.2d 184, 188 (Ind.2007).

### II. Revocation of Probation

#### A. Analytical Framework and Procedural Posture

A trial court may revoke a person's probation if "the person has violated a condition of probation during the probationary period...." Ind.Code § 35–38–2–3(a)(1). "The state must prove the violation by a preponderance of the evidence." Ind.Code § 35–38–2–3(e). "Probation may not be revoked for failure to comply with conditions of a sentence that imposes financial

obligations on the person unless the person recklessly, knowingly, or intentionally fails to pay." Ind.Code § 35–38–2–3(f).

Probation revocation is a two-step process:

> First, the court must make a factual determination that a violation of a condition of probation actually occurred. If a violation is proven, then the trial court must determine if the violation warrants revocation of the probation. Indiana has codified the due process requirements ... by requiring that an evidentiary hearing be held on the revocation and providing for confrontation and cross-examination of witnesses by the probationer. When a probationer admits to the violations, the procedural safeguards ... and the evidentiary hearing are unnecessary. Instead, the court can proceed to the second step of the inquiry and determine whether the violation warrants revocation. However, even a probationer who admits the allegations against him must still be given an opportunity to offer mitigating evidence suggesting that the violation does not warrant revocation.

*Woods*, 892 N.E.2d at 640 (citations omitted).

On appeal, Smith argues "only that the evidence was insufficient to support the trial court's finding that a violation occurred," referring to the first step. Appellant's Br. at 6.

■ In probation revocation cases involving payment of a financial obligation, implicating Indiana Code section 35–38–2–3(f), the State bears the burden to prove the fact of the violation, i.e., less than full payment, but the statute is unclear as to who bears the burden regarding the probationer's requisite mental state and ability to pay. *Runyon v. State*, 939 N.E.2d 613, 616 (Ind.2010). As an element of the offense, the State necessarily bears the

burden to prove the requisite mental state, but *Runyon* reveals an indistinct relationship—at least at step two of the revocation process—between the requisite mental state and a probationer's ability to pay.

■ In *Runyon*, the probationer admitted his violation of probation in failing to pay child support, court costs, and probation user fees. Our supreme court stated:

> The defendant expressly admitted to the trial court that he had violated his probation conditions and that he failed to make the required payments. This was sufficient to establish by a preponderance of the evidence that the defendant violated conditions of his probation and that his failure to pay was knowing, if not also intentional.

*Runyon*, 939 N.E.2d at 617. *Woods* states: "[w]hen a probationer admits to the violations .... the court can proceed to the second step of the inquiry and determine whether the violation warrants revocation [by giving the probationer] an opportunity to present evidence that explains and mitigates his violation." 892 N.E.2d at 640.

*Runyon* and *Woods* involved probationers who admitted their violations, and accordingly the holdings therein that address step two of the revocation process do not control here, where Smith did not admit his violation, testified at length at an evidentiary hearing, and on appeal challenges the sufficiency of the evidence to revoke his probation in step one of the revocation process. In the same vein, although *Runyon* discusses who bears the burden of proof as to the probationer's ability to pay in step two of the proceedings, *Runyon* neither expressly limits consideration of the probationer's ability to pay to step two of the proceedings nor prohibits its consideration in step one. Therefore, while mindful of *Runyon*'s guidance, we decide

this case involving dissimilar facts based on distinct principles of law.

### B. Partial Payments

■ At the outset, we decline to consider Smith's partial payments as knowing failures to pay that would establish violation of his probation.[2] *See* Ind.Code § 35–41–2–2(b) ("A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so."). "[A]bsent an admission by the defendant, [his mental state] must be determined from a consideration of the defendant's conduct and the natural and usual consequences thereof." *Spann v. State*, 632 N.E.2d 741, 743 (Ind.Ct.App. 1994). Here, there is no indication that Smith knew—or was aware of a high probability—that his partial payments would equate to a failure to make weekly payments.[3]

To conclude Smith's partial payments constitute a knowing failure to make weekly payments would discourage partial payment for the benefit (albeit limited) of his children in favor of no payment at all. No payment at all, although certain to harm his children, would allow a probationer to avoid one route to a judicial finding of knowingly failing to pay and resulting revocation. Despite the possibility that an understanding trial court might prevent an injustice by limiting revocation as appropriate, an incongruous incentive would remain because probationers might not willingly violate their probation with a partial payment with the hopeful expectation of an understanding trial court at the second step of the process.

■ For that reason, a ruling that Smith's partial payments constitute a knowing failure to make weekly payments would render the statutory mental state requirement for revocation meaningless, illusory, superfluous, and contrary to public policy. *See Zanders v. State*, 800 N.E.2d 942, 944–45 (Ind.Ct.App.2003) (interpreting a statute to avoid rendering any part of it meaningless or superfluous); *Dague v. Piper Aircraft Corp.*, 275 Ind. 520, 418 N.E.2d 207, 211 (1981) (interpreting a statute so as to avoid an irrational result); *see also Keramida v. Zachmanoglou*, 470 N.E.2d 769, 772 (Ind.Ct.App.1984) (noting our disdain for an illusory legal standard). In construing statutes, we "endeavor to give [the statute] a practical application, to construe it so as to prevent absurdity, hardship, or injustice, and to favor public convenience." *Faris Mailing, Inc. v. Ind. Dep't of State Revenue, Sales & Use Tax Div.*, 557 N.E.2d 713 (Ind.Tax 1990) (citation omitted). Our supreme court has directed us to construe statutes cautiously "where adherence to the letter of the law would lead to injustice, absurdity or contradictory provisions." *Park 100 Dev. Co. v. Ind. Dep't of Revenue*, 429 N.E.2d 220, 223 (Ind.1981). Consequently, we interpret and apply the governing statutes, Indiana Code sections 35–38–2–3(f) (regarding violation of conditions of probation

---

**2.** Counsel for the State asserted at oral argument that Smith's probation was revoked for his knowing failure to make weekly payments, and also that whether he did so intentionally or recklessly was not addressed. We limit our review accordingly.

**3.** In *Stephens v. State*, 874 N.E.2d 1027 (Ind. Ct.App.2007), *trans. denied, cert. denied*, 553 U.S. 1039, 128 S.Ct. 2443, 171 L.Ed.2d 242 (2008), we stated: "when the State presents evidence that a child support order was in place and the defendant is in arrears, that evidence is sufficient to support the factfinder's determination that the defendant intentionally failed to provide support." *Id.* at 1035 (citing *Blatchford v. State*, 673 N.E.2d 781, 783 (Ind.Ct.App.1996)). However, *Stephens* was decided in the context of a conviction for nonsupport of a dependent child, not a probation violation, and is therefore inapplicable here.

imposing financial obligations) and 35–41–2–2 (regarding mental state) such that Smith's partial payments do not constitute a knowing failure to make weekly child support payments. We do not, however, hold that partial payments always foreclose a finding of a knowing or intentional failure to pay. Nevertheless, partial payments, without more, do not establish a knowing failure to pay.

### C. Allocation of the Burden of Proof

■ In *Szpunar v. State*, 914 N.E.2d 773 (Ind.Ct.App.2009), we held the State bears the burden to prove a probationer's ability to pay when faced with revocation for failure to pay restitution. *Id.* at 779. Although concerning restitution and not child support payments, *Szpunar* is similar to this case in that the probationer appealed the trial court's determination that a violation occurred after appearing at an evidentiary hearing and—without admitting any failure to pay—discussed health problems and other facts related to his inability to pay.

Similarly, a portion of *Runyon* that discusses step one of the revocation process indicates that the State bears the burden to prove Smith's ability to pay. Addressing the statutory framework of revocation proceedings, the supreme court stated:

> As to the fact of [probation] violation, the statute expressly imposes the burden of proof upon the State. But with respect to the ability to pay, the burden of proof is not explicitly designated [in the statute]. Where the claimed violation is that the probationer failed to comply with financial conditions of probation, the trial court must be convinced both that the condition was violated and that the failure to pay was reckless, knowing, or intentional. Because proof of both of these components is required before a trial court may revoke probation, we hold that it is the State's burden to prove both the violation and the requisite state of mind in order to obtain a probation revocation.

*Runyon*, 939 N.E.2d at 616.

■ In clarifying who bears the burden to prove "the ability to pay," the supreme court concluded the State bears the burden of proving the probationer's "requisite state of mind." *Id.* This reasoning logically implies that a probationer's failure to pay cannot be considered reckless, knowing, or intentional if he was unable to pay. Although *Runyon* focused on the second step, this portion of the opinion clarifies the burden to prove each element of a violation—the first step.[4]

■ This reading of *Runyon* is also consistent with and analogous to the common law rule that involuntary intoxication may be a full defense to the extent it negates a defendant's requisite mental state.[5] *Cf. Sanchez v. State*, 749 N.E.2d 509, 517 (Ind.2001) (explaining that Indiana statutes have abrogated a similar common law rule such that voluntary intoxication cannot negate a defendant's mental state). In other words, a probationer's inability to pay, like a defendant's involuntary intoxication, might prevent satisfaction of the requisite mental state.

---

**4.** *Cf. Runyon*, 939 N.E.2d at 617 ("[W]e hold that it is the defendant probationer's burden, consistent with the result in *Woods*, to show facts related to an inability to pay and indicating sufficient bona fide efforts to pay so as to persuade the trial court that further imprisonment should not be ordered.") (discussing step two of the probation revocation process).

**5.** Further, a probationer's inability to pay (to the extent it is involuntary) is more akin to involuntary intoxication than it is to voluntary intoxication, which the General Assembly has abrogated.

And as an affirmative defense that negates an element of the offense, the State bears the burden to prove its absence.[6] *Davis v. State*, 481 N.E.2d 434, 436 (Ind.Ct.App. 1985), *trans. denied.*

 Therefore, we hold that a trial court may revoke probation for failure to satisfy a financial obligation only if the State satisfies its burden to prove by a preponderance of the evidence: 1) less than full payment; and 2) the probationer submitted less than full payment recklessly, knowingly, or intentionally. To prove "knowingly" the State must show by a preponderance of the evidence that the probationer was able to pay. Our holdings do not apply, of course, where a probationer admits his violation and the trial court proceeds directly to the second step of the revocation process.

At Smith's revocation hearing, neither Smith nor the State made an explicit argument as to his ability or inability to pay during any period. The transcript reveals Smith was employed during part of the time he did not make full payments (which was the basis for the trial court ruling), but it does not clearly indicate his income was such that he was able to pay. Notably, the hearing focused on Smith's various medical problems, hospital stays (at a free clinic), required treatments, and lack of health insurance, all of which lead to an inference of Smith's restrained finances—not an ability to pay. Because the State did not present evidence to establish Smith's ability to pay during the relevant period, it failed to satisfy its burden and the trial court abused its discretion in revoking Smith's probation.

### D. Abuse of Discretion

In any event, upon reviewing the record we conclude that even if Smith violated the conditions of his probation, the trial court abused its discretion by revoking his probation to the full. Given Smith's poor health and medical conditions with ongoing or at least long-lasting effects, lack of health insurance, and his notable efforts to seek employment, his personal and financial situation during the period he was alleged to have failed to make payments do not warrant revocation to the full, imposing nearly his entire three-year sentence suspended to probation in June 2007. Although we do not reweigh the evidence, assess the credibility of witnesses, or make inferences beyond those flowing from the evidence, *Baxter*, 774 N.E.2d at 1044, the sparse record does not support revocation to the full, and the trial court abused its discretion in so ordering.

### Conclusion

The State did not meet its burden to prove Smith's ability to pay notwithstanding his failure to pay weekly child support as a condition of his probation. Moreover, even if he did violate his probation the trial court abused its discretion in revoking

---

6. We acknowledge that assigning the burden to prove a probationer's ability to pay in a revocation proceeding to the State might appear incongruous with our holding that the defendant bears the burden to prove his inability to pay when charged with the underlying offense of non-support of a dependent child. *See Blatchford*, 673 N.E.2d at 783. However, notably, the underlying offense requires proof that the defendant acted knowingly or intentionally, Ind.Code § 35–46–1–5(a), and yet revocation is permitted where the probationer failed to make payments *reck-* *lessly*, knowingly, or intentionally, Ind.Code § 35–38–2–3(f). Therefore, although the State bears a greater burden regarding proof of an ability to pay when charging a new offense than when revoking probation, the State may revoke probation but cannot charge a new offense for reckless failure to pay. To the extent this allocation of the burden of proof is inappropriate for either a conviction or revocation of probation, correction of such is a task for the General Assembly.

Smith's probation to the full. Therefore, we reverse the trial court's order revoking Smith's probation.

Reversed.

RILEY, J., and BROWN, J., concur.