## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 22 2019, 6:53 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Sean C. Mullins
Appellate Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Samantha M. Sumcad
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Robert Antonio Dunbar,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

April 22, 2019

Court of Appeals Case No.
18A-CR-2355

Appeal from the Lake Superior
Court

The Honorable Diane Ross
Boswell, Judge

The Honorable Kathleen A.
Sullivan, Magistrate

Trial Court Cause No.
45G03-1709-F4-34

**Crone, Judge.**

## Case Summary

[1] Robert Antonio Dunbar appeals his probation revocation, challenging the sufficiency of the evidence to support the trial court's finding of a probation violation. Finding the evidence sufficient, we affirm.

## Facts and Procedural History

[2] The evidence most favorable to the judgment is as follows. In September 2017, Dunbar broke into the home of ex-girlfriend Sushi Staples, who was sixteen weeks pregnant with his child. Staples was asleep when Dunbar entered her bedroom. She awoke to find him striking her on the head and body. Then, in the presence of Staples's four-year-old son, Dunbar threw Staples across the hallway, into the bathroom, and into the tub. Staples phoned police and reported that she believed Dunbar to still be inside her home. Police found him hiding inside a closet underneath some clothes, and he refused the officers' orders to come out. He physically resisted their efforts to pull him out but was eventually subdued.

[3] The State charged Dunbar with level 4 felony burglary, level 5 felony domestic battery resulting in bodily injury to a pregnant woman, level 6 felony domestic battery in the presence of a person less than fourteen years old, class A misdemeanor invasion of privacy, and class A misdemeanor resisting law enforcement. On March 5, 2018, Dunbar pled guilty via plea agreement to level 6 felony domestic battery in the presence of a person less than fourteen years old, and the State dismissed the remaining charges. The stipulated plea

agreement reads, in part, "The parties agree that there shall be a No Contact Order entered against the defendant in regards to the victim in this case for the length of his sentence[.]" Appellant's App. Vol. 2 at 29. That same day, the trial court sentenced Dunbar to two and one-half years, with one year executed in the Indiana Department of Correction ("DOC") and one and one-half years suspended to probation.

[4] Within a week of his release from the DOC, Dunbar made attempts to contact Staples via Facebook Messenger. Lake County Probation Officer Gisela Thielbar confronted Dunbar about contacting Staples, and although he denied it at first, he later said, "Okay, I'll stop." Tr. Vol. 2 at 14-15. The State filed a petition to revoke Dunbar's probation, alleging that Dunbar attempted to contact Staples in violation of a no-contact order and that he had failed to pay probation fees totaling $180. After a hearing, the trial court found that Dunbar had violated his probation and executed the remaining eighteen months of his sentence. Dunbar now appeals. Additional facts will be provided as necessary.

## Discussion and Decision

[5] Dunbar asserts that the evidence is insufficient to support the trial court's determination that he violated his probation. Probation is a matter of grace left to the trial court's sound discretion, not a right to which a criminal defendant is entitled. *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007). The trial court determines the conditions of probation and may revoke probation if the probationer violates those conditions. *Id.* On review, we neither reweigh evidence nor reassess witness credibility; rather, we consider the evidence and

reasonable inferences most favorable to the judgment. *Pierce v. State*, 44 N.E.3d 752, 755 (Ind. Ct. App. 2015).

[6]     Probation revocation is a two-step process, wherein the trial court first makes a factual determination as to whether the probationer violated the terms of his probation. *Woods v. State*, 892 N.E.2d 637, 640 (Ind. 2008). Because a probation revocation proceeding is civil in nature, the State need only prove the alleged probation violation by a preponderance of the evidence. *Holmes v. State*, 923 N.E.2d 479, 485 (Ind. Ct. App. 2010). If a violation is found, the court then determines whether the violation warrants revocation. *Woods*, 892 N.E.2d at 640. Proof of a single violation is sufficient to permit a trial court to revoke probation. *Beeler v. State*, 959 N.E.2d 828, 830 (Ind. Ct. App. 2011), *trans. denied*.

[7]     Dunbar maintains that the State failed to prove that Staples was the person who contacted Thielbar about the Facebook Messenger friend requests and that Dunbar was "Capo Rob," the sender of the friend request messages. State's Ex. 1. During the revocation hearing, Thielbar testified that Staples had called her concerning the friend requests. Although the officer had never met Staples in person, she testified that she believed that Staples was the caller because the caller provided information to her that was not publicly available concerning the case. Staples took screenshots of the friend request messages and emailed them to Thielbar. These messages include photos of Dunbar. When Thielbar confronted Dunbar about contacting Staples, he denied it at first but later said, "Okay, I'll stop." Tr. Vol. 2 at 14-15. With respect to this statement, Dunbar

told the court, "Yes. I made a mistake when I caught the case. By me telling her I would stop contacting her, I never said—if I did do it, I admit to what I did. I feel like this is my first violation and I was going through paying my fees and my interstate compact." *Id.* at 19-20. Dunbar's admission completely undercuts his argument that the State failed to prove that he was the sender of the messages and that Staples was the recipient.

[8] For the first time on appeal, Dunbar challenges the existence of the no-contact order and points us to an online registry to show the absence of an entry concerning it. However, the record includes several references to the entry of a no-contact order. First and foremost, the no-contact order was a provision in Dunbar's stipulated plea agreement. *See* Appellant's App. Vol. 2 at 29 ("The parties agree that there shall be a No Contact Order entered against the defendant in regards to the victim in this case for the length of his sentence[.]"). The no-contact order is also referenced in the sentencing order. *See id.* at 35 ("Pursuant to the plea agreement, the defendant enters into a No Contact Order, for the length of the sentence."). Moreover, probation officer Thielbar testified at the revocation hearing concerning the existence of the no-contact order. *See* Tr. Vol. 2 at 8 ("Q. Does the sentencing order indicate a no contact order was, in fact, entered[?] A. Yes."). Finally, the no-contact order is referenced in the chronological case summary. *See* Appellant's App. Vol. 2 at 4 (March 5, 2018 entry: "Pursuant to PA, a NCO is entered."). The evidence most favorable to the judgment is sufficient to support the existence of a valid no-contact order. Based on the foregoing, we conclude that the State

established by a preponderance of the evidence that Dunbar violated his probation. Accordingly, we affirm the trial court's judgment revoking Dunbar's probation.

[9] Affirmed.

Bradford, J., and Tavitas, J., concur.