**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Aug 21 2012, 9:20 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**PATRICIA CARESS MCMATH**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JOSEPH Y. HO**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CHRISTOPHER DAVIS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1201-CR-19 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Steven Eichholtz
The Honorable Michael Jensen, Magistrate
Cause No. 49G20-9808-FC-131076

**August 21, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Christopher Davis appeals the revocation of his probation and the execution of his previously suspended sentence. Davis presents the following restated issues for review:

1. Was Davis denied due process when the trial court found he violated probation and community corrections by engaging in criminal conduct, but the State alleged in its petition merely that he was arrested and charged with criminal offenses?

2. Were the trial court's findings adequate to support the decision to revoke probation?

3. Did the revocation court err in revoking probation and executing the entire term of the suspended sentence?

We affirm.

The facts favorable to revocation are that in 1998, Davis pleaded guilty to dealing in cocaine and was sentenced to thirty years, with ten years suspended and two years served on probation. Davis started probation on June 25, 2010. On March 2, 2011, a notice was filed alleging Davis violated probation by virtue of being charged with assisting a criminal, a class D felony, and failing to comply with the condition of probation that he not associate with anyone likely to influence him to violate conditions of probation. On July 6, 2011, the State filed an amended notice adding a third allegation, this one for failing to report to a drug lab on May 31, 2011. A second amended notice was filed on September 6, 2011, adding the allegation that Davis failed to comply with his probationary financial obligation. Two days later, Davis admitted that he failed to report to the drug lab as alleged in the first amended notice. The trial court found he violated probation and placed him on work-release for the balance of his probation.

On October 2, 2011, while Davis was serving work-release at the Duvall Center, his

wife, Monica Davis, was released from the Marion County Jail, where she had been incarcerated. Monica went home and found Davis's brother removing things from the house. She telephoned Davis at the Duval Center in an effort to resolve the situation. She also called the police, who arrived a short time later. The matter was eventually settled and the brother took some items but left others. Shortly thereafter, still on the evening of October 2, Monica left the house with a flat screen television and rented it to a neighbor for a few days because she needed money.

That evening, Davis complained of chest pains and, at approximately 7:00 p.m., an ambulance arrived at the Duvall Center and transported him to Wishard Hospital. He checked into Wishard at 7:24 and checked out at 9:40 p.m. Davis telephoned the Duvall Center three times that evening. He called at 7:25 and 9:07 and informed the Center both times that he was at Wishard. He called again at 10:54 and claimed that he was leaving Wishard. He arrived back at the Duvall Center at 11:12 p.m.

Meanwhile, when Monica arrived home at approximately 9:00 p.m. from renting the television, Davis was there. Upset and yelling at Monica, Davis dragged her into and then through the house, demanding to know where the television was. He threatened and cut Monica with a knife on several occasions. While they were inside the house, Monica heard someone pull up in a vehicle and "holler[] inside the house … [d]o you need us, cuz." *Transcript* at 21-23. Davis responded that he did not. Finally, he walked her to the neighbor's house, retrieved the television, and returned it to their home. He then left the house. After Davis left, Monica called police and reported what had happened.

Officer Scott Greer of the Indianapolis Metropolitan Police Department responded to

3

Monica's call. When he arrived shortly after midnight on October 3, Monica was "pretty hysterical, crying, shaken up." *Id.* at 42. Monica gave an account of what had occurred that was consistent with the narrative above. Officer Greer proceeded to the Duval Center to speak with Davis. Davis reported that he had gone to Wishard because he experienced chest pains and that when he left Wishard at approximately 9:45 p.m., he returned directly to the Duvall Center. He specifically denied stopping anywhere, including home, on the way back. Davis claimed that he walked the entire way – a distance of between three and four miles. Officer Greer placed Davis under arrest.

On October 4, 2011, Davis was charged under Cause No. 49G17-1110-FD-070349 with criminal confinement, criminal recklessness, domestic battery, and battery, all as class D felonies, and domestic battery and battery as class A misdemeanors. Marion County Community Corrections filed a notice of community corrections violation, alleging that Davis had violated the terms of his community corrections placement by being arrested and charged with the foregoing offenses. On October 12, a notice of probation violation was filed against Davis, alleging the following violations of his probation: (1) He was arrested and charged with the crimes against Monica in connection with the incident on October 2; (2) he failed to comply with the conditions of his placement with Marion County Community Corrections; (3) he failed to obtain full-time employment; and (4) he failed to comply with his financial obligation. Following a hearing on December 22, 2011, the trial court found that Davis violated probation and his community corrections placement, revoked his probation, and executed the previously suspended ten years of his sentence.

1.

4

Davis contends he was denied due process when the trial court revoked his probation on grounds that he had engaged in criminal conduct, but the State's notice of violation alleged merely that he was arrested and charged with criminal offenses, but not that he actually engaged in the charged conduct. As Davis frames it, "[t]he State presented evidence that [he] engaged in criminal conduct but he was not on notice that he had to defend an allegation he committed criminal conduct. The fact he was arrested is insufficient to find a probation violation." *Appellant's Reply Brief* at 2.

Probation is a matter of grace that confers conditional liberty; it is a favor, not a right. *Cooper v. State*, 917 N.E.2d 667 (Ind. 2009). The trial court sets the conditions of probation and is authorized to revoke probation if those conditions are violated. *Id.* The decision whether to revoke probation is committed to the trial court's sound discretion. *Id.* We review its decision for abuse of that discretion. *Id.* "Although probationers are not entitled to the full array of constitutional rights afforded defendants at trial, 'the Due Process Clause of the Fourteenth Amendment [does] impose … procedural and substantive limits on the revocation of the conditional liberty created by probation.'" *Id.* at 671-72 (quoting *Woods v. State,* 892 N.E.2d 637, 640 (Ind. 2008)). At a minimum, due process requires the following concerning a probationer's revocation hearing: (a) "[W]ritten notice of the claimed violations of probation; (b) disclosure of the evidence against him; (c) an opportunity to be heard and present evidence; (d) the right to confront and cross-examine adverse witnesses; and (e) a neutral and detached hearing body. *Id.* at 672.

Davis cites *Gleason v. State*, 634 N.E.2d 67 (Ind. Ct. App. 1994), in support of the proposition that "probation cannot be revoked for a violation that was not alleged."

5

*Appellant's Reply Brief* at 1-2. The proposition is undoubtedly true, but does not apply here in the manner that Davis contends. In *Gleason*, the defendant was convicted of child molesting and received an eight-year sentence, which was suspended to probation. At some point, the State alleged that Gleason violated his probation by:

> being arrested on a new offense from Branch County, Michigan. Mr. Gleason was arrested today on a warrant from Branch County for the offense of Child Abusive Commercial Activity, Cause # 89-01476-fy. This is a felony in Michigan, punishable with a term of up to twenty years in prison. This officer interviewed Mr. Gleason on 11-21-89, and Mr. Gleason said that he had continued to take nude picture (sic) of Jesse and Jon Cummings while he was on probation. He also said that although Jesse and Jon are now twenty years old, they may have been under the age of eighteen when he was taking the nude pictures.

*Id.* at 68. The State presented evidence at the revocation hearing that, while on probation, Gleason had taken nude photographs of the boys and had been convicted of a felony in Michigan while on probation. This court reversed the revocation of probation upon the following rationale:

> The violation alleged in the petition to revoke probation was not a criminal offense, and as such, the trial court properly found that it could not be used to revoke Gleason's probation. The trial court instead revoked Gleason's probation because of his felony conviction while on probation. In most circumstances this would be proper because a criminal conviction is prima facie evidence of a violation and will alone support a revocation of probation. However, the State's Motion Seeking Revocation of Probation did not notify Gleason that an alleged violation was the felony conviction in Michigan. The State's failure to give Gleason written notice of this claimed violation deprived Gleason of adequate due process. Therefore, the trial court erred in revoking Gleason's probation based on the felony conviction.

*Id.* at 68-69. The foregoing reveals that the finding upon which the trial court based revocation, i.e., a Michigan felony conviction, was not alleged in the petition to revoke. The same cannot be said in the present case.

6

Davis was arrested for the alleged attack upon Monica on October 3, and on October 12 that arrest, among other things, was cited as grounds for revoking his probation. The hearing upon the State's revocation petition was held on December 22. At that hearing, the State presented Monica's testimony about the occurrence, as well as that of Officer Greer. At the conclusion of the evidence, the court announced its decision as follows:

> I think that the State has met its burden of proof by a preponderance of the evidence that he engaged in criminal conduct while on work release in violation of his Community Corrections rules and his probation, and secondly, because of that, he violated conditions of the pass because he was not where he was supposed to be at the hospital part of that time.

*Transcript* at 87-88. Davis would have us reverse the revocation because of the perceived distinction between the grounds upon which the request for revocation was based, i.e., that he was *charged with* committing a criminal offense, and the grounds cited for revocation, i.e., that he actually *engaged* in the behavior alleged in the charging informations.

Davis concedes that "all that is necessary [to support revocation] is that there is evidence to satisfy probable cause that the probationer committed a new offense." *Appellant's Reply Brief* at 1. As set out above, due process required that Davis be apprised of the basis for revocation so that he could defend against the charge, should he choose to do so. The notice of violation alleged that Davis was arrested and charged with criminal confinement, criminal recklessness, two counts of domestic battery, and two counts of battery, all in connection with an October 2 incident at Monica's home. A cause number for those charges was also provided. Therefore, there could be no doubt about which of Davis's actions the revocation petition was premised upon. Although it is true in a technical sense that the petition did not specify that it was based upon actions and not charges, it is apparent

7

that Davis was not confused about the nature of the State's request for revocation.

The petition was sufficient to apprise Davis of the fact that he had been charged with battering and confining Monica on October 2, 2011, and that his probation could be revoked if the State convinced the trial court by a preponderance of the evidence that he had committed the alleged acts. Davis's defense at the hearing clearly evinced his fundamental understanding of the grounds for the petition to revoke probation. Davis appeared with counsel at the hearing and vigorously defended against the revocation petition by cross-examining witnesses and taking the stand to testify on his own behalf. He denied Monica's claim that he attacked her, and offered argument to the court consistent with the claim that he went directly back to the Duvall Center after leaving the hospital and did not stop at his home or encounter Monica. The record belies Davis's assertion that the violation notices did not "allege any specific conduct by [] Davis giving rise to the arrest or charges filed." *Appellant's Brief* at 7. Significantly, Davis did not argue that he was not the subject of the charging informations or that the mere allegation of being charged with crimes was insufficient to support revocation. In summary, due process required that Davis be apprised of the nature of the charges against him such as to enable him to mount a meaningful defense. In light of what transpired at the revocation hearing, due process was satisfied in this respect.

Finally with regard to this issue, we note Davis's argument that "there was no evidence that the arrest and charges resulted in a conviction, and in fact all the charges against [] Davis were ultimately dismissed." *Id*. For purposes of the validity of the revocation, it is irrelevant that the State dismissed the underlying charges. *See Cooper v. State*, 917 N.E.2d 667. As our Supreme Court has determined, a defendant's probation may

be revoked even where he or she was acquitted of the charges that provide the basis for a probation revocation. *Id.* Although an arrest by itself will not support revocation of probation, "proof that the defendant engaged in the alleged criminal conduct is sufficient to support revocation of probation. In addition, if the trial court after a hearing finds that the arrest was reasonable and there is probable cause to believe the defendant violated a criminal law, revocation will be sustained." *Id*. at 674. Again, this is true regardless of whether the charge was ultimately dismissed. The evidence at the hearing and, most especially Monica's testimony, was sufficient to establish by a preponderance of the evidence that Davis committed the alleged acts.

2.

Davis contends the trial court's written findings were not adequate to support the decision to revoke probation. In *Morrissey v. Brewer*, 408 U.S. 471 (1972), the United States Supreme Court determined that due process in the probation revocation context requires a written statement by the factfinder containing the evidence relied upon and the reasons for revoking probation. The *Morrissey* requirement was recognized in Indiana in *Jaynes v. State*, 434 N.E.2d 923 (Ind. Ct. App. 1982).

Davis was afforded a full evidentiary hearing with respect to the State's petition to revoke at which he was represented by counsel. The trial court heard the arguments of counsel at the conclusion of the presentation of evidence. Thereafter, the court orally found that Davis had stopped at his house and battered Monica, in violation of his community placement restrictions as well as the conditions of his probation, and then went on to explain its reasons for revocation. The statement from the bench was later reduced to writing in the

9

transcript of the hearing. This court has long held that the *Morrissey* writing requirement "is met where, in the probationer's presence, the trial court orally makes findings of fact, revokes probation, states the reasons for revocation, and the statement from the bench is later reduced to writing in the transcript of the hearing." *See*, *e.g.*, *Mumford v. State*, 651 N.E.2d 1176, 1179 (Ind. Ct. App. 1995), *trans. denied*. The writing requirement was satisfied in the present case.

In so holding, we reject Davis's contention that "trial court's oral statement does not cure the deficiency of the written statement because the trial court did not identify the specific evidence or testimony relied upon to find that Mr. Davis violated probation and community corrections." *Appellant's Brief* at 10. To the contrary, the court explained that it listened to the witnesses for the two sides – basically referring to Monica and Davis – and noted the significant discrepancy between their accounts. In the end, the court obviously believed Monica's testimony that Davis visited and battered her and disbelieved Davis's denial of that claim and his assertion that he had walked straight home from the hospital to the Duvall Center. There is no error here.

3.

Davis contends the trial court erred in revoking probation and ordering that the entire term of the suspended sentence be executed. The decision to revoke probation is committed to the trial court's sound discretion. We review that decision on appeal only for abuse of that discretion. *Woods v. State,* 892 N.E.2d 637. In conducting this review, we consider only the evidence most favorable to the judgment and do not reweigh evidence or judge witness credibility. *Id.* The State must prove the probation violation by a preponderance of the

10

evidence. Ind. Code Ann. § 35–38–2–3(e) (West, Westlaw current with all 2012 legislation).

If there is substantial evidence of probative value supporting the determination that a defendant has violated any terms of probation, we will affirm the decision to revoke. *Woods v. State,* 892 N.E.2d 637. As a general rule, a trial court may properly order execution of a suspended sentence so long as it follows the procedures outlined in I.C. § 35–38–2–3. *Abernathy v. State,* 852 N.E.2d 1016 (Ind. Ct. App. 2006). I.C. § 35–38–2–3(g) provides that upon finding a violation of probation, a trial court may "[o]rder execution of all or part of the sentence that was suspended at the time of initial sentencing." *See also Stephens v. State,* 818 N.E.2d 936 (Ind. 2004).

After probation has been revoked, a trial court may execute all or part of the previously suspended sentence, subject to certain restrictions not applicable here. Our Supreme Court has described the appellate review of sentences imposed for probation violation as follows:

> Probation is a matter of grace left to trial court discretion, not a right to which a criminal defendant is entitled. The trial court determines the conditions of probation and may revoke probation if the conditions are violated. Once a trial court has exercised its grace by ordering probation rather than incarceration, the judge should have considerable leeway in deciding how to proceed. If this discretion were not afforded to trial courts and sentences were scrutinized too severely on appeal, trial judges might be less inclined to order probation to future defendants. Accordingly, a trial court's sentencing decisions for probation violations are reviewable using the abuse of discretion standard. An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances.

*Prewitt v. State,* 878 N.E.2d 184, 188 (Ind. 2007) (internal citations omitted).

The record establishes that after serving probation for just more than one year, Davis was alleged to have violated the conditions of his probation on multiple counts. The court

found the allegations to be true and added work-release as a condition of probation. In the present case, the court determined that Davis violated the conditions of probation by failing to return directly to the Duvall Center from the hospital and by battering Monica.

Thus, Davis violated the terms of his probation by committing the previously described offenses against Monica. "[U]ltimately it is the trial court's discretion as to what sanction to impose under [I.C. § 35–38–2–3(g),]" and the trial court was statutorily authorized to execute the entirety of Davis's previously suspended sentence. *Abernathy v. State,* 852 N.E.2d at 1022. Moreover, although on probation for little more than one year, Davis violated the terms of his probation on at least one prior occasion, causing the trial court to add work-release as a condition of probation. Yet, this did not reform Davis's behavior. He seeks to minimize this by pointing out that he has "generally been fulfilling his monetary obligations" and was going to school. *Appellant's Brief* at 12. Even assuming those claims are true, the trial court is not constrained by law to overlook repeated violations of some conditions of probation merely on grounds that the probationer at the same time complied with others. The facts as set forth above, including multiple violations of the conditions of probation, demonstrate that the trial court had ample basis for its decision to order Davis to serve the remainder of his suspended sentence. The trial court, therefore, did not abuse its discretion by ordering him to do so.

Judgment affirmed.

BROWN, J., and DARDEN, Senior Judge, concur.