ATTORNEYS FOR APPELLANTS
Joseph C. Chapelle
Mark J. Crandley
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES
Karl L. Mulvaney
Nana Quay-Smith
Kent D. Zepick
Indianapolis, IN

David A. Lewis
Jeffersonville, Indiana

In the

# Indiana Supreme Court

No. 10S00-0606-CV-199

CLARK COUNTY COUNCIL AND
CLARK COUNTY AUDITOR,

*Appellants (Defendants below)*,

v.

DANIEL F. DONAHUE, CECILE A.
BLAU, VICKI CARMICHAEL, AND
STEVEN M. FLEECE,

*Appellees (Plaintiffs below)*.

Appeal from the Clark Circuit Court, No. 10C01-0506-PL-375
The Honorable Elaine B. Brown, Special Judge

On Petition to Transfer Pursuant to Appellate Rule 56(A)

**September 26, 2007**

**Sullivan, Justice.**

A dispute has arisen in Clark County over the purposes for which "probation users' fees" collected from persons placed on probation can be spent and the authority for making those spending decisions. State law is clear that probation users' fees may be spent only to supplement

probation services and to supplement salaries for probation officers; they may not be used to re-place other funding of probation services. The county fiscal body shares authority for spending decisions with the courts in the county that provides probation services.

## Background

As we have previously recognized, probation serves the humane purposes of allowing an offender to avoid incarceration and meet financial responsibilities through gainful employment, while still allowing a court opportunities for supervision and revocation if necessary. Stephens v. State, 818 N.E.2d 936, 941 (Ind. 2004); Cox v. State, 706 N.E.2d 547, 550 (Ind. 1999). Indiana trial court judges have the authority to award, supervise, and revoke probation. The probationary scheme is deliberately designed to give trial judges the flexibility to make quick, case-by-case determinations. Reyes v. State, 868 N.E.2d 438, 440 (Ind. 2007); Stephens, 818 N.E.2d at 941-42.

When placing a person convicted of a felony on probation, a judge is required to order the person to pay a "probation user's fee." Ind. Code § 35-38-2-1(b) (Supp. 2006). When plac-ing a person convicted of a misdemeanor on probation, a judge is authorized, but not required, to order the person to pay a probation user's fee. Id. The Legislature has set forth parameters on the amount and timing of these fees. Id. § 1(d) & (e). It has also specified that all probation us-ers' fees collected (net of not more than 3% that a clerk of court may deduct to defray the admin-istrative costs of collecting the fee, id. § 1(c)) be transferred to the county treasurer, who is to deposit the money into the "county supplemental adult probation services fund."[1] Id. § 1(f). Any money remaining in the fund at the end of the year does not revert to any other fund but continues in the county supplemental adult probation services fund. Id. § 1(h).

The dispute in this case is over the purposes for which money in the county supplemental adult probation services fund can be spent and the authority for making those spending decisions.

---

[1] Though the facts of this case deal only with a county-level county supplemental adult probation services fund, I.C. § 35-38-2-1(g) also provides for fees collected by a city or town entity to be deposited into a local supplemental adult probation services fund. Special provisions concerning probation users' fees apply in delinquency cases. See I.C. § 31-40-2-1.

The Clark County Council takes the position that it has the power to appropriate from the county supplemental adult probation services fund without the participation of county judges and that its use of the funds has not constituted the "replacement" of other funds. The judges of the Clark Circuit and Superior Courts take the position that county judges should decide how to spend the county's supplemental adult probation services fund, and that the Indiana Code does not allow for money from the fund to replace money budgeted for probation services in prior years.

An abbreviated procedural history of this case is sufficient for purposes of this opinion. After the Clark County Council appropriated the funds on deposit in the county's supplemental adult probation services fund to meet many of the expenses of the county's courts (including those unrelated to probation) and their probation departments (including those previously paid from the county general fund), the Clark County judges filed an action seeking a declaratory judgment as to whether the appropriation of funds from the county's supplemental adult probation services fund was contrary to law. The judges also issued an order for mandate of funds pursuant to Trial Rule 60.5 to require the Clark County Council to fund court services from the county general fund (rather than the supplemental adult probation services fund). The Honorable Elaine B. Brown, Judge of the DuBois Superior Court, accepted our appointment as special judge in July 2005, and the declaratory judgment and mandate actions were consolidated before her. Each side filed a motion for summary judgment in the declaratory judgment action; Judge Brown entered judgment for the judges. We express our appreciation to Judge Brown for her service.

This case is now before us pursuant to Appellate Rule 56(A).

3

**Discussion**

**I**

The language of the statute itself and its legislative history make clear that it was contrary to law for the County Council to appropriate money in the county supplemental adult probation services fund for court expenses unrelated to probation and for probation expenses previously paid from the county general fund. The two principal subsections of the statute make this clear:

> The fiscal body of the county shall appropriate money from the county supplemental adult probation services fund: (1) to the county, superior, circuit, or municipal court of the county that provides probation services to adults to supplement adult probation services; and (2) to supplement the salaries of probation officers in accordance with the schedule adopted by the county fiscal body under IC 36-2-16.5.[2]
>
> . . .
>
> [T]he county . . . supplemental adult probation services fund may be used only to supplement probation services and to supplement salaries for probation officers. A supplemental probation services fund may not be used to replace other funding of probation services. Any money remaining in the fund at the end of the year does not revert to any other fund but continues in the county or local supplemental adult probation services fund.

I.C. § 35-38-2-1(f), (h). The statute affirmatively sets forth the purposes for which money in the fund is to be spent: to "supplement adult probation services" and to "supplement the salaries of probation officers." And it prohibits spending on anything else, including an explicit prohibition on "replac[ing] other funding of probation services."

The legislative intent here is unmistakable. The money in the fund may only be used to "supplement," i.e., to fund new, or increases in existing, probation services and to fund increases in the salaries of probation officers. It may not be used as the source of funding for probation services previously paid from other sources.

---

[2] I.C. chapter 36-2-16.5 allows the Indiana Judicial Conference to prescribe minimum salaries for probation officers.

We think this conclusion requires little explication but make four brief observations that reinforce it.

First, when the statute was first enacted, it did not contain the explicit authorization to spend money from the fund to increase probation officer salaries. See I.C. § 35-38-2-1 (Supp. 1983). Such a provision was added in 1986. Pub. L. No. 178-1986, § 2.[3] This amendment demonstrates how restrictedly the Legislature viewed the grant of spending authority – that it needed to be expanded if it was to cover even the supplement of probation officer salaries.

Second, as described in footnote one, supra, the statute also authorizes a "local supplemental adult probation services fund" where city or town courts have adult probation services programs. I.C. § 35-38-2-1(g). This money is subject to exactly the same provisions as that in a county supplemental adult probation services fund, including the provision that money not revert at the end of the year – with one exception. Any money remaining in the local supplemental adult probation services fund at the end of the local fiscal year in a county with a population of more than 182,790, but less than 200,000, "may be appropriated by the city or town fiscal body to the city or town court for use by the court for purposes determined by the fiscal body." Id. § 1(j). Only where the local supplemental adult probation services fund of a city or town court in Elkhart County has an unexpended balance, and only at the end of the year, may the money be spent for purposes other than supplementing probation services or probation officer salaries. The limited nature of this exception again illustrates how narrowly the Legislature viewed the grant of spending authority.

Third, the statutory requirement that money in the fund be used only to "supplement" probation services or probation officer salaries and the statutory prohibition that it not be used to "replace" other probation funding have analogs in federal regulations consistent with our interpretation of their meaning here. The regulation of the use of federal money often includes what is known as a "supplement-not-supplant" ("SNS") requirement. E.g, No Child Left Behind Act of 2001, 20 U.S.C. § 6321(b) (Supp. IV 2004). If such a regulation exists, the recipient of fed-

---

[3] In 2003, the "increase" language was changed to today's "supplement" language. Pub. L. No. 277-2003, § 11.

eral funds may use those funds to add to or increase an existing program, but may never use the funds to replace completely money from another source. Federal SNS requirements were introduced in the 1960s to ensure that federal aid would be spent as intended and in addition to existing funding.[4] At its core, an SNS requirement forces those who seek and gain federal funding under its auspices to ask the theoretical question, "What would the funded program have looked like without these funds?" If the answer to the question is "The funded program would not have existed," rather than, "The funded program would have been somewhat more limited," then the SNS requirement has probably been violated. Here, the Council used money in the supplemental adult probation services fund "to pay for 90 percent of the direct cost of administering the county's probation offices and for probation officer salaries." (Appellants' Br. at 8.) The 90% funding did not supplement, but rather replaced, money spent from the county general fund in prior years.

Fourth, constitutional due process and separation of functions considerations point to this result. Probation users' fees are imposed on persons convicted of crimes. The Due Process Clause of the U.S. Constitution and analogous protections under the Indiana Constitution limit the amount and circumstances under which probation users' fees and other conditions may be imposed on criminal defendants. See Gordy v. State, 674 N.E.2d 190, 192 n.3 (Ind. Ct. App. 1996) (outlining balancing test used to determine whether a probation condition impermissibly infringes upon a probationer's constitutional right). While generally speaking a reasonable user's fee may be appropriate, see United States v. Sperry Corp., 493 U.S. 52, 60-63 (1989), to the extent that ongoing court or even probation operations would be dependent upon revenue raised by the imposition of probation users' fees, these constitutional limitations might well be threatened by the need for revenue. For similar reasons, the independence that judges enjoy to decide when a person convicted of a crime is to be sentenced to probation, Reyes, 868 N.E.2d at 440, also cannot be impinged upon by the need for revenue. Judicial independence demands that sentencing decisions be entirely free of court and probation fiscal considerations. As discussed in Part II, infra, the responsibility for appropriating money from the fund is the responsibility of the council, not the judges, and a blurring of the line of responsibility might threaten the constitutional separation of functions in article III of the Indiana Constitution.

---

[4] See Marjorie Hunter, U.S. Aides Split Over Education Grants, N.Y. Times, Feb. 25, 1981, at A16.

## II

Although we agree with the Clark County judges that the decision of the County Council to spend money in the supplemental adult probation services fund for general court and probation services violated the statutory restrictions that the money be spent only to supplement probation services and probation officer salaries, we do not agree with the judges that the County Council's role with respect to appropriating money in the fund is purely ministerial.

As set forth above, the operative subsection of the statute provides:

> The fiscal body of the county shall appropriate money from the county supplemental adult probation services fund: (1) to the county, superior, circuit, or municipal court of the county that provides probation services to adults to supplement adult probation services; and (2) to supplement the salaries of probation officers in accordance with the schedule adopted by the county fiscal body under IC 36-2-16.5.[5]

I.C. § 35-38-2-1(f). In this respect, the fund is what is referred to in government finance parlance as a "dedicated fund," i.e., the spending of the revenue dedicated to it is limited by law to specific purposes. Another common characteristic of a dedicated fund, also present here, is that the balance in the fund at the end of the fiscal year does not revert to the general, but remains in the dedicated fund. Id. § 1(h). But beyond these limitations, the appropriations authority of the county fiscal body is not further circumscribed.

For example, the General Assembly cannot spend revenue dedicated by law to the Fish and Wildlife Fund for prisons, because the relevant statute dictates that all money from fines for violating fish and wildlife law is dedicated to the Fish and Wildlife Fund and may be used only for protecting and propagating fish, birds, and wildlife in Indiana and certain operating expenses and programs. I.C. §§ 14-22-3-3, 5. But the General Assembly must formally "appropriate" the money in the fund to the State Department of Natural Resources before it can be legally expended. And it is within the purview of the General Assembly to decide how much will be ap-

---

[5] See footnote 2, supra.

propriated in any one year and how the money will be expended within the parameters established by statute.

Similarly, a county fiscal body cannot spend money in the county's supplemental adult probation services fund, except to supplement probation services and probation officer salaries. I.C. § 35-38-2-1(f). But the county fiscal body must formally "appropriate" the money in the fund to the courts before it can be legally expended. Id. And it is within the purview of the county fiscal body to decide how much will be appropriated in any one year and how the money will be expended within the parameters established by the statute.

We have been gratified at the extent to which county fiscal bodies and courts throughout our state have been able to cooperate on the use of probation users' fees. Probation departments, persons on probation, and the communities of this state have been the beneficiaries of this cooperation. We have attracted and retained high-quality probation officers by supplementing their salaries and have been able to keep many low-risk offenders who otherwise would have been incarcerated close to their families and in productive employment. We are hopeful that today's decision clarifies the respective roles and responsibilities of the county fiscal bodies and the courts so that this highly productive degree of cooperation continues apace.

### Conclusion

This case is remanded to the trial court with directions that the Clark County Council is to appropriate or otherwise return to the county adult probation services fund an amount, if any, equal to that expended from the fund for purposes other than to supplement probation services and probation officer salaries.

Shepard, C.J., and Dickson, Boehm, and Rucker, JJ., concur.

8