**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**JENNIFER GOODWIN SCHLEGELMILCH**
Hulse, Lacey, Hardacre & Austin, P.C.
Anderson, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

TONY LAMAR THOMPSON,              )
                                 )
    Appellant-Defendant,        )
                                 )
       vs.                    )    No. 48A05-1311-CR-546
                                 )
STATE OF INDIANA,                )
                                 )
    Appellee-Plaintiff.         )

APPEAL FROM THE MADISON CIRCUIT COURT III
The Honorable Thomas Newman Jr., Judge
Cause No. 48D03-1006-FA-248

**June 12, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**SULLIVAN, Senior Judge**

Tony Lamar Thompson appeals from the trial court's order revoking his probation, contending that the trial court's decision was not supported by sufficient evidence, and that the trial court abused its discretion by imposing the entirety of his previously suspended sentence upon finding the violation. Concluding that there is no error here, we affirm the trial court's decision.

On June 9, 2010, the State charged Thompson with five counts of dealing in cocaine, each as a Class A felony. Pursuant to a plea agreement, Thompson pleaded guilty to five counts of dealing in cocaine, each as a Class B felony. On January 5, 2011, the trial court sentenced Thompson to concurrent terms of twenty years with six years executed and fourteen years suspended. The trial court ordered Thompson to serve a ten-year period of probation after his initial term of imprisonment.

Thompson was released from prison in early 2013 and was placed on six months of house arrest, which ended on July 29, 2013. The State filed a notice of violation of probation/suspended sentence on August 23, 2013. Jaclyn Allen testified during the final portion of the evidentiary hearings[1] held concerning the allegation. She testified that on August 18, 2013, she and her friends were gathered at her house that evening "chilling" and barbequing. Tr. p. 77. Thompson and two other men arrived in a green van at Jaclyn's house on that date and asked for Jaclyn's cousin, Dustin, whose street name was "Gold Mouth." *Id.* Sharika Allen, Jaclyn's cousin and Dustin's sister, was also present and saw that two of the men, including Thompson, were armed with guns. *Id.* at 33. Thompson

---

[1] Additional facts about the course of the evidentiary hearings will be supplied later.

and the others asked for "Gold Mouth" to come outside, and when told that Dustin was not there, said that he, meaning Dustin, needed to "quit hiding behind bitches." *Id.*

When police approached Jaclyn's house, the two men who had come with Thompson fled the scene. Thompson had returned to the green van where Daisy Fletcher was waiting, and was observed trying to give the gun to Fletcher, who appeared to be reluctant to accept the gun from him. The exchange of the gun between the two was described as "like a hot potato." *Id.* at 38. In the end, Thompson placed the gun in the van, and he and the woman started to walk away from the scene.

Anderson Police Officer Chris Hoyle was one of the officers who arrived at Jaclyn's house. Jaclyn approached Officer Hoyle, told him that Thompson had placed a gun in the green van, and pointed toward Thompson, who continued to walk away from the scene. A subsequent inventory search of the van revealed the presence of a Llama .45 caliber gun behind the van's front passenger seat.

The evidentiary hearing concluded after testimony was heard on October 7, 2013, at which time the trial court found that Thompson had committed the alleged violations of his probation. The court then revoked Thompson's previously-suspended sentence of fourteen years, ordering the sentence to be served in the Department of Correction. Thompson now appeals.

Thompson claims that the trial court abused its discretion by finding that he violated the conditions of his probation because there was insufficient evidence to support the trial court's conclusion. We begin with the premise that "[p]robation is a matter of grace left to trial court discretion, not a right to which a criminal defendant is entitled." Prewitt v. State,

3

878 N.E.2d 184, 188 (Ind. 2007). "[C]ourts in probation revocation hearings may consider any relevant evidence bearing some substantial indicia of reliability." Cox v. State, 706 N.E.2d 547, 551 (Ind. 1999). It is within the discretion of the trial court to determine the conditions of a defendant's probation and to revoke probation if the conditions are violated. Prewitt, 878 N.E.2d at 188. In a sense, all probation requires "strict compliance" because probation is a matter of grace, and once the trial court extends this grace and sets its terms and conditions, the probationer is expected to comply with them strictly. Woods v. State, 892 N.E.2d 637, 641 (Ind. 2008). If the probationer fails to do so, then a violation has occurred. Id. But even in the face of a probation violation, the trial court may nonetheless exercise its discretion in deciding whether to revoke probation. Id. (citing Clark Cnty. Council v. Donahue, 873 N.E.2d 1038, 1039 (Ind. 2007) ("The probationary scheme is deliberately designed to give trial judges the flexibility to make quick, case-by-case determinations.")).

Violation determinations and sanctions are reviewed for abuse of discretion. Id. An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances, or when the trial court misinterprets the law. Prewitt, 878 N.E.2d at 188. We consider only the evidence most favorable to the judgment without reweighing that evidence or judging the credibility of the witnesses. Woods, 892 N.E.2d at 639 (citing Braxton v. State, 651 N.E.2d 268, 270 (Ind. 1995)). If there is substantial evidence of probative value to support the trial court's decision that a defendant has violated any terms of probation, the reviewing court will affirm its decision to revoke probation. Id. at 639–40.

Probation revocation is a two-step process. First, the trial court must make a factual determination that a violation of a condition of probation actually occurred. Beeler v. State, 959 N.E.2d 828, 829–30 (Ind. Ct. App. 2011). Second, if a violation is found, then the trial court must determine the appropriate sanction for the violation. Id. A probation revocation hearing is civil in nature, and the State's burden is to prove the alleged violations only by a preponderance of the evidence. Figures v. State, 920 N.E.2d 267, 272 (Ind. Ct. App. 2010). Violation of a single term or condition of probation is sufficient to revoke probation. Washington v. State, 758 N.E.2d 1014, 1017 (Ind. Ct. App. 2001). When reviewing an appeal from the revocation of probation, the reviewing court considers only the evidence most favorable to the judgment, and does so without reweighing the evidence or reassessing the credibility of the witnesses. Piper v. State, 770 N.E.2d 880, 882 (Ind. Ct. App. 2002).

The basis for the alleged probation violation was Thompson's commission of another criminal offense, unlawful possession of a firearm by a serious violent felon, a Class B felony. Because Thompson had been convicted, pursuant to the plea agreement, of multiple counts of dealing in cocaine, each as a Class B felony, his possession of a firearm was prohibited by statute. Ind. Code §35-47-4-5(b)(23) (2012). Although the trial court withheld the reading of the probation rules at the time of Thompson's sentencing for his underlying convictions, and the written probation order containing the specific conditions of his sentence do not explicitly state as much, "[i]t is not necessary to advise a defendant to avoid committing an additional crime as a condition of probation because such a condition is automatically included by operation of law without specific provision

5

to that effect." Wilburn v. State, 671 N.E.2d 143, 147 (Ind. Ct. App. 1996); see also Ind. Code §35-38-2-1(b)(23) (2012).

Both Thompson and the State experienced difficulty in having their respective witnesses honor their subpoenas. At the initial setting of the evidentiary hearing, only one witness, Sharika, appeared to testify. While both Thompson and the State discussed having the hearing reset in order to secure the presence and testimony of their witnesses, the State proceeded with Sharika's testimony in order to save her the trouble of reappearing at a later date. Sharika testified that she had seen Thompson with a handgun. After the completion of her testimony, the trial court continued the proceedings to afford Thompson and the State the opportunity to secure their witnesses' presence.

On October 7, 2013, the State presented testimony of law enforcement officers involved in the investigation of the incident at Jaclyn's house. It was then that Officer Hoyle testified about being approached by Jaclyn and informed about Thompson putting a handgun in the green van. Thompson responded by producing Daisy Fletcher's testimony that Thompson was not armed that day and Thompson's own testimony to the same effect. At the conclusion of that testimony, the trial court stated that the evidence did not establish by a preponderance of the evidence that Thompson possessed a handgun as alleged. During the trial court's comments along this vein, Jaclyn appeared in the courtroom, at which time the State requested permission to have her testify. The trial court allowed her testimony, which included her statements that she had seen Thompson at her house on August 18, 2013, and that he had a handgun, which she saw him place in the green van. Thompson availed himself of the opportunity to cross-examine Jaclyn, but never challenged her

6

testimony described above. Instead, Thompson's focus was on determining if Jaclyn or someone else had posted comments on her Facebook page. Thus, Jaclyn's testimony was uncontradicted. The trial court stated after Jaclyn's testimony, "I'm now convinced that he possess[ed] that handgun." Tr. p. 85. The evidence is sufficient to sustain the trial court's finding that Thompson violated the conditions of his probation by possessing a handgun.

Thompson also contends that the trial court abused its discretion by imposing the entire fourteen-year suspended sentence upon Thompson's violation of the conditions of his probation. A trial court's sentencing decisions for a probation violation are reviewable under an abuse of discretion standard. Prewitt, 878 N.E.2d at 188. Our Supreme Court offered the following reasoning in support of that standard:

> Once a trial court has exercised its grace by ordering probation rather than incarceration, the judge should have considerable leeway in deciding how to proceed. If this discretion were not afforded to trial courts and sentences were scrutinized too severely on appeal, trial judges might be less inclined to order probation to future defendants.

Id. An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances. Id. "As long as the proper procedures have been followed in conducting a probation revocation hearing, 'the trial court may order execution of a suspended sentence upon a finding of a violation by a preponderance of the evidence.'" Wilkerson v. State, 918 N.E.2d 458, 464 (Ind. Ct. App. 2009) (quoting Goonen v. State, 705 N.E.2d 209, 212 (Ind. Ct. App. 1999)).

The record before us shows that the trial court was familiar with Thompson's criminal history, noting that at sentencing for a prior conviction Thompson was not ready

7

to rehabilitate himself, but that Thompson might be capable of rehabilitating himself now. To that end, the trial court observed that although Thompson's current offenses required the imposition of an executed sentence, if Thompson obtained his GED while serving that sentence, that term could be reduced. While announcing that a period of probation would be imposed as part of Thompson's sentence, the trial court withheld reading the terms and conditions of probation, holding that task in abeyance until such time that Thompson's behavior in the Department of Correction could be reviewed, and the appropriateness of Thompson's candidacy for Drug Court could be evaluated.

Thompson responded to those potential opportunities by committing the offense of unlawful possession of a firearm by a serious violent felon less than eight months into his ten-year probation period and days after the completion of his house arrest. He arrived at Jaclyn's house in the company of Daisy Fletcher, a convicted felon. Thompson informed the trial court that while he was aware he was not to be in the company of convicted felons, he was with her anyway. Thompson further admitted to the trial court that he had taken a hydrocodone pill he had received from a friend and had received marijuana from that same friend. Thompson went to Jaclyn's house with others, at least one of whom was armed, for the purpose of confronting "Gold Mouth" for his alleged mistreatment of the mother of Thompson's child. Thompson was angry and the scene could have escalated into more violent behavior save for the absence of "Gold Mouth" at Jaclyn's house and the arrival of police.

In reaching its probation sentencing decision, the trial court remarked that Thompson's period of incarceration had not changed Thompson's lifestyle upon his

release. Also unpersuasive is Thompson's argument that he remained on the premises after the police arrived. Jaclyn and Sharika each testified that after Thompson placed the gun in the green van, he and Daisy Fletcher began walking away. Thompson did not run away from the scene like his companions, but he did not remain at Jaclyn's residence to await the arrival of the police officers. Rather, he was stopped by police officers after Jaclyn pointed toward him.

Reviewing the evidence before the trial court, we cannot say that the trial court's decision is clearly against the logic and effect of the facts and circumstances. The trial court was within its discretion to impose the entirety of Thompson's sentence upon finding that Thompson had violated the terms of his probation.

In sum, we conclude that sufficient evidence supports the trial court's finding that Thompson violated the terms of his probation by committing an additional offense. Further, we conclude that the trial court did not abuse its discretion by issuing its order that Thompson serve the entirety of his previously suspended sentence.

Affirmed.

FRIEDLANDER, J., and KIRSCH, J., concur.