**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**RYAN W. TANSELLE**
Capper Tulley & Reimondo
Brownsburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW FALK**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CHARLES COLEMAN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 32A04-1310-CR-507 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HENDRICKS SUPERIOR COURT
The Honorable Karen M. Love, Judge
Cause Nos. 32D03-1112-FD-1133
32D03-1204-FD-405

**June 20, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**SHARPNACK, Senior Judge**

## STATEMENT OF THE CASE

Charles Coleman appeals from the trial court's order revoking his probation and sentencing him to serve 400 days of his previously suspended sentence in the Department of Correction.

We affirm.

## ISSUE

Coleman presents one issue for our review which we restate as: whether the trial court abused its discretion by ordering Coleman to serve 400 days of his previously suspended sentence in the Department of Correction after his admission to violating the terms of his probation.

## FACTS AND PROCEDURAL HISTORY

On December 8, 2011, a vehicle Coleman was driving was stopped by Clayton Police Department Officer John Clossey for speeding while driving on U.S. 40 in Hendricks County. Officer Clossey observed that Coleman appeared to be intoxicated. Coleman was given three field sobriety tests, each of which he failed. The portable breath test administered to him at the scene revealed that he registered a .141 blood alcohol concentration. After consenting to take a certified breath test, Coleman's blood alcohol concentration was determined to be .12.

The State charged Coleman under cause number 32D03-1112-FD-1133 ("FD-1133") with one count of operating while intoxicated causing endangerment, a Class A misdemeanor, one count of operating a vehicle while intoxicated with a blood alcohol content of at least .08 but less than .15, a Class A misdemeanor, one count of operating

2

while intoxicated causing endangerment while having been convicted of the same offense within five years, a Class D felony, and operating a vehicle while intoxicated with a blood alcohol content of at least .08 with a prior conviction within five years, a Class D felony.

Coleman and the State reached a plea agreement in FD-1133, but prior to the plea hearing in that case, Coleman was arrested and charged with committing a new set of violations involving operating a vehicle while intoxicated. On April 13, 2012, Coleman was operating a vehicle when that vehicle struck a gas pump in Belleville, Indiana. He was charged in Hendricks County under cause number 32D03-1204-FD-405 ("FD-405") with operating while intoxicated causing endangerment, a Class A misdemeanor, and operating a vehicle while intoxicated with a prior conviction within five years, a Class D felony. On May 14, 2012, Coleman pleaded guilty to one count of operating a vehicle while intoxicated causing endangerment while having been convicted of the same offense within five years, a Class D felony, under FD-1133, and one count of operating a vehicle while intoxicated with a prior conviction within five years, a Class D felony, under FD-405. Coleman was placed on probation under both cause numbers.

On August 21, 2012, a petition and notice of violation of probation was filed against Coleman in both cases alleging that Coleman had violated his probation by failing to allow members of the Hendricks County Sheriff's Department to enter his residence to check for alcohol. Additionally, the notice alleged that Coleman had left inappropriate voicemail messages on his probation officer's telephone and on the telephones of other probation officers.

After Coleman's arrest on the no-bond warrants issued in both cases, Coleman's

3

counsel filed a motion for a psychiatric evaluation to determine Coleman's competence to participate in the probation revocation proceedings. The trial court granted Coleman's motion and the examinations finding Coleman fit to stand trial were subsequently received by the trial court.

On October 29, 2012, the trial court found that Coleman had violated the terms of his probation by failing to cooperate with probation officers and revoked a portion of Coleman's suspended sentences in FD-1133 and FD-405. The trial court sentenced Coleman to 110 days executed in the Indiana Department of Correction, with credit for fifty-five days actually served and fifty-five days of good time credit. The probation terms in both cases were modified, placing Coleman on non reporting probation for 387 days, requiring Coleman to obtain and cooperate with a home health care nurse and sign a release to allow for the exchange of information between that home health care nurse and the probation department, and requiring Coleman to live alone or with a family member. The sentences were to be served concurrently.

On June 7, 2013, the probation department filed a second petition and notice of probation violation against Coleman in both FD-1133 and FD-405 alleging that he failed to permit law enforcement to enter his home, that he failed to submit to a portable breath test for alcohol upon request, and that he failed to cooperate and behave respectfully with the probation department.

At the evidentiary hearing held on the second petition, Coleman admitted that he violated the terms and conditions of his probation. Coleman did admit that he refused to allow a law enforcement officer into his home on June 7, 2013, that he failed to submit to

4

a portable breath test, and that those actions constituted a failure to cooperate with the probation department. He argued, however, that he should be given mental health treatment instead of being returned to the Department of Correction.

The State argued that Coleman's probation should be revoked and that he serve 730 days in the Department of Correction. The State claimed that Coleman was a danger to himself and to others and that because he would not follow instructions, he could not be supervised by the probation department "in any way." Tr. at 8. In particular, Coleman called his probation officer and left messages including vulgarities, and statements about having sex with her. The probation officer believed there were indications that Coleman had been drinking when the topic of his voice mail messages to her became inappropriate.

After taking the matter under advisement, the trial court found that Coleman had admitted that he violated the terms and conditions of his probation. The trial court revoked 400 days of Coleman's previously suspended sentences, 200 days in each case, to be served consecutively in the Department of Correction. In addition, the trial court requested and recommended that Coleman receive mental health treatment and counseling while in the Department of Correction. Coleman now appeals.

DISCUSSION AND DECISION

Coleman appeals from the trial court's order revoking his probation, contending that the trial court abused its discretion by sentencing him to serve 400 days of his previously suspended sentence in the Department of Correction. We begin with the premise that "[p]robation is a matter of grace left to trial court discretion, not a right to which a criminal defendant is entitled." *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007). Courts in

probation revocation hearings "may consider any relevant evidence bearing some substantial indicia of reliability." *Cox v. State*, 706 N.E.2d 547, 551 (Ind. 1999). It is within the discretion of the trial court to determine the conditions of a defendant's probation and to revoke probation if the conditions are violated. *Prewitt*, 878 N.E.2d at 188. In a sense, all probation requires "strict compliance" because probation is a matter of grace, and once the trial court extends this grace and sets its terms and conditions, the probationer is expected to comply with them strictly. *Woods v. State*, 892 N.E.2d 637, 641 (Ind. 2008). "If the probationer fails to do so, then a violation has occurred." *Id.* "But even in the face of a probation violation the trial court may nonetheless exercise its discretion in deciding whether to revoke probation." *Id.* (citing *Clark Cnty. Council v. Donahue*, 873 N.E.2d 1038, 1039 (Ind. 2007) ("The probationary scheme is deliberately designed to give trial judges the flexibility to make quick, case-by-case determinations.")).

Violation determinations and sanctions are reviewed for abuse of discretion. *Heaton v. State*, 984 N.E.2d 614, 616 (Ind. 2013). "An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances." *Prewitt*, 878 N.E.2d at 188. We consider only the evidence most favorable to the judgment without reweighing that evidence or judging the credibility of the witnesses. *Woods*, 892 N.E.2d at 639 (citing *Braxton v. State*, 651 N.E.2d 268, 270 (Ind. 1995)). "If there is substantial evidence of probative value to support the trial court's decision that a defendant has violated any terms of probation, the reviewing court will affirm its decision to revoke probation." *Id.* at 639–40.

6

"Probation revocation is a two-step process. First, the trial court must make a factual determination that a violation of a condition of probation actually occurred." *Woods*, 892 N.E.2d at 640. Second, if a violation is found, then the trial court must determine the appropriate sanction for the violation. *Id.* A probation revocation hearing is civil in nature, and the State's burden is to prove the alleged violations only by a preponderance of the evidence. *Cox*, 706 N.E.2d at 551. Violation of a single term or condition of probation is sufficient to revoke probation. Ind. Code § 35-38-2-3(a)(1) (2012). When reviewing an appeal from the revocation of probation, the reviewing court considers only the evidence most favorable to the judgment, and does so without reweighing the evidence or reassessing the credibility of the witnesses. *Cox*, 706 N.E.2d at 551.

Coleman admitted that he violated the terms of his probation by refusing to allow law enforcement to enter his home and administer a portable breath test. His argument on appeal is that the trial court abused its discretion by placing him in the Department of Correction because of his mental health issues. He claims that the trial court erroneously found him to be a danger to society.

Indiana Code section 35-38-2-3 provides leeway to the trial court in terms of its disposition upon the finding of a probation violation. Although Coleman presents an argument akin to that made when sentences are reviewed under Indiana Appellate Rule 7(b), in the context of a trial court's sentencing decisions for probation violations, the standard of review is for an abuse of discretion. *Prewitt*, 878 N.E.2d at 188.

Prior to the plea hearing for FD-1133, Coleman committed the offenses leading to the charges filed against him in FD-405. In that case, Coleman was operating a vehicle

while intoxicated causing property damage at a gas station. Probation was a part of Coleman's original sentence for both cases and he was allowed to continue on probation after he was found to have committed his first probation violation. Coleman appeals from the trial court's dispositional order from his second probation violation. Thus, Coleman has received leniency from the trial court, but has violated his probation twice nonetheless. He refused to allow law enforcement officers into his home to administer a portable breath test, and left disrespectful and inappropriate messages on the telephones of probation officers. Thus, Coleman's continued disregard for the law and the rules imposed upon him in spite of the leniency afforded him support the trial court's decision to revoke his probation. The trial court did not abuse its discretion by revoking Coleman's probation and reinstating the 400 remaining days of Coleman's suspended sentences.

Although Coleman was evaluated and determined to be competent to stand trial, he previously had been diagnosed as schizophrenic. The trial court requested that Coleman receive a mental health evaluation and recommended mental health treatment for Coleman while at the Department of Correction. The trial court made this recommendation at the conclusion of the evidentiary hearing, at the dispositional hearing, and included that recommendation in the abstract of judgment for both cases. Coleman has not met his burden of proving that the trial court's placement decision is clearly against the logic and effect of the facts and circumstances. *Prewitt*, 878 N.E.2d at 188.

## CONCLUSION

In light of the above, we affirm the trial court's decision.

ROBB, J., and BAILEY, J., concur.

8