## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 01 2016, 8:32 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Anthony C. Lawrence
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Marvin Hester,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

June 1, 2016

Court of Appeals Case No.
48A02-1509-CR-1384

Appeal from the Madison Circuit Court.
The Honorable Angela Warner Sims, Judge.
Cause No. 48C01-1309-FD-1712

**Darden, Senior Judge**

## Statement of the Case

[1] Marvin Hester appeals from the trial court's order revoking his probation and imposing 525 days of his previously-suspended sentence to be served in the Indiana Department of Correction. We affirm.

## Facts and Procedural History

On September 19, 2014, Hester was convicted after a bench trial of pointing a firearm,[1] a Class D felony, at his mother, Deborah Hester. Hester failed to appear for his original October 7, 2014, sentencing date. However, after a warrant was issued for his arrest, he appeared for his re-scheduled January 5, 2015 sentencing date. At that time he received a three-year sentence, 180 days of which were ordered to be served executed in the Department of Correction. Hester received 120 days of jail time credit, plus good time credit. The remaining 855 days were suspended to probation to be served in the Adult Daily Probation Program. Hester signed the intake form which outlined the terms and conditions of his probation.

On February 3, 2015, a notice of adult day reporting termination was filed along with a request for a warrant for Hester's arrest. The trial court granted the warrant request the next day and ordered Hester arrested and held without bond. Hester proceeded pro se at his March 12, 2015 probation evidentiary hearing, at the conclusion of which the trial court found Hester had violated the terms and conditions of his probation by failing to behave well in society by committing the new offense of invasion of privacy. Hester was sanctioned by the trial court by being ordered to serve seventy-four days in the Madison

---

[1] Ind. Code § 35-47-4-3 (1995).

County Detention center. Hester received credit for thirty-seven jail time days, plus good time credit, and was returned to adult day reporting.

[4] Although Hester was ordered to refrain from using or consuming alcohol or illegal drugs, and was given random drug and alcohol screens, he failed multiple times. The most recent failed urine screen occurred on April 29, 2015, when he tested positive for marijuana. He admitted that he consumed alcohol a few days prior to that failed screen.

[5] On May 15, 2015, Officer Shad Grile, a patrolman with the Anderson Police Department, was dispatched to 702 Heritage Lane. The dispatcher stated that the call involved trouble with a man by the name of Hester. The dispatcher also mentioned that someone had a knife.

[6] As Officer Grile pulled up to the residence in his patrol car, a female, later identified as Cindy Potter, Deborah Hester's landlord, flagged down the officer. Potter told the officer that he, meaning Hester, or they, meaning Deborah Hester and Gean, her brother, had a knife. Officer Grile went into the house through the garage door entrance where he observed a female subject and a male subject lying on top of a naked male subject. He observed a very large knife, which was neither a switch blade nor a steak knife, in the air. The officer moved closer to the individuals and observed that the male and female on top were trying to keep the naked male from gaining control of the knife. The naked male was later identified as Hester; the female was later identified as

Deborah Hester; and the other male was later identified as Gean Hester, Hester's uncle and Deborah's brother.

[7] Officer Grile told Hester to let go of the knife, but he refused. Officer Grile then instructed Deborah and Gean not to let go of the knife. The officer slowly and deliberately approached the three, grabbed Hester's wrist and began prying Hester's fingers one at a time off the knife. Once Hester's fingers were no longer on the knife, Officer Grile instructed Deborah and Gean to let go of the knife as well. After they complied, the officer grabbed the knife and placed it on a nearby table.

[8] The officer, Deborah, and Gean restrained Hester until another officer could arrive to help. Hester was yelling, and Officer Grile explained why they were continuing to restrain him. Hester, whose face was "nose to nose" with Deborah's, spat in her face several times.

[9] Officer Brad McClain of the Anderson Police Department arrived at the house to assist Officer Grile. Officer McClain secured the knife as Officer Grile arrested Hester for spitting in Deborah's face. Hester fought with Officer Grile and refused to put clothes on. Subsequently, he was transported to jail.

[10] Officer McClain interviewed Deborah, Gean, and Potter after Hester was taken away. In their statements to him, Deborah and Gean stated that the previous evening Deborah had called police officers and asked them to make Hester leave in an attempt to evict him. However, because Hester had lived there for a

while, the police officers were unable to make Hester leave. Deborah began carrying a knife on her person because she was afraid of her son.

[11] On the day of the incident, Hester started speaking in an aggressive tone toward Deborah before he went to shower. After he had finished showering, Hester entered the living room and confronted Deborah with a metal pipe in his hand. Deborah had the knife in her hand. Hester began waving the metal pipe as if to strike Deborah and lunged at her. Gean intervened and the three began to wrestle, and apparently Potter called the police.

[12] Hester gained control of the knife as Deborah and Gean attempted to safely wrestle it away from him before police officers arrived. According to Deborah, Hester spat on her a total of four times, two times before the police arrived, and he bit her on the wrist twice. In Hester's videotaped statement, he admitted that he spat on Hester.

[13] On May 19, 2015, the State filed a petition to revoke Hester's probation. The trial court held an evidentiary hearing and took the matter under advisement. On July 31, 2015, the trial court found that Hester had violated his probation by testing positive for marijuana, consuming alcohol, and committing the new criminal offense, battery by bodily waste, but made no finding as to the allegation of resisting law enforcement. The trial court gave Hester jail credit time of seventy-five days, plus good time credit. The court then revoked 525 days of Hester's previously suspended sentence. Hester now appeals.

# Discussion and Decision

[14]  Hester argues that the trial court abused its discretion by ordering him to serve 525 days of his previously suspended sentence. First, Hester claims there is insufficient evidence to support the finding that he violated the terms of his probation by committing battery by bodily waste, given his claim of self-defense. Next, he contends that the trial court abused its discretion by failing to acknowledge the progress he was making while on probation when imposing sanction for his probation violation.

[15]  We begin with the premise that "[p]robation is a matter of grace left to trial court discretion, not a right to which a criminal defendant is entitled." *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007). Courts in probation revocation hearings "may consider any relevant evidence bearing some substantial indicia of reliability." *Cox v. State*, 706 N.E.2d 547, 551 (Ind. 1999). It is within the discretion of the trial court to determine the conditions of a defendant's probation and to revoke probation if the conditions are violated. *Prewitt*, 878 N.E.2d at 188. In essence, all probation requires "strict compliance" because probation is a matter of grace, and once the trial court extends this grace and sets its terms and conditions, the probationer is expected to strictly comply with them. *Woods v. State*, 892 N.E.2d 637, 641 (Ind. 2008). "If the probationer fails to do so, then a violation has occurred." *Id.* "But even in the face of a probation violation the trial court may nonetheless exercise its discretion in deciding whether to revoke probation." *Id.* (citing *Clark Cnty. Council v. Donahue*, 873 N.E.2d 1038, 1039 (Ind. 2007) ("The probationary scheme is

deliberately designed to give trial judges the flexibility to make quick, case-by-case determinations.”)).

[16] Violation determinations and sanctions are reviewed for abuse of discretion. *Heaton v. State*, 984 N.E.2d 614, 616 (Ind. 2013). “An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances.” *Prewitt*, 878 N.E.2d at 188. We consider only the evidence most favorable to the judgment without reweighing that evidence or judging the credibility of the witnesses. *Woods*, 892 N.E.2d at 639 (citing *Braxton v. State*, 651 N.E.2d 268, 270 (Ind. 1995)). “If there is substantial evidence of probative value to support the trial court’s decision that a defendant has violated any terms of probation, the reviewing court will affirm its decision to revoke probation.” *Woods,* at 639-40.

[17] “Probation revocation is a two-step process. First, the trial court must make a factual determination that a violation of a condition of probation actually occurred.” *Id.* at 640. Second, if a violation is found, then the trial court must determine the appropriate sanction for the violation. *Id.* A probation revocation hearing is civil in nature, and the State’s burden is to prove the alleged violations only by a preponderance of the evidence. *Cox*, 706 N.E.2d at 551. Violation of a single term or condition of probation is sufficient to revoke probation. Ind. Code § 35-38-2-3(a)(1) (2012). When reviewing an appeal from the revocation of probation, the reviewing court considers only the evidence most favorable to the judgment, and does so without reweighing the evidence or reassessing the credibility of the witnesses. *Cox*, 706 N.E.2d at 551.

[18] Before the incident leading to Hester's arrest for battery by bodily waste, it is undisputed that Hester had failed several drug screens despite being informed that a term of his probation was to refrain from the use of illegal drugs and the consumption of alcohol. His most recent failed urine screen occurred on April 29, 2015 when he tested positive for marijuana. Hester admitted that he had consumed alcohol a couple of days prior to failing that most recent screen. Either one of those violations standing alone would support the trial court's decision to find a violation and revoke Hester's probation.

[19] Further, the trial court was presented with overwhelming evidence that Hester angrily spat in his mother's face in the presence of Officer Grile. Deborah, Hester's mother, gave a statement to police indicating that Hester spat on her four times during that incident, two times before police officers arrived, and bit her on the wrist twice. Hester presented testimony that he spat in his mother's face, but that it was done in self-defense. However, the trial court was in the best position to weigh the evidence and assess the credibility of the witnesses. We find there is sufficient evidence to support the trial court's finding. The trial court did not abuse its discretion by relying on this additional ground for revoking Hester's probation.

[20] Additionally, the record reveals that the trial court showed great patience with Hester's behavior and progress while on probation. Hester is to be commended for gaining employment at two places of business and meeting some of the goals set for him in the rehabilitative process. However, Hester's continued

disrespect for his mother and for the law, warrants the sanction selected by the trial court, which previously had shown leniency with Hester.

## Conclusion

[21] In light of the foregoing, we affirm the trial court's decision.

Riley, J., and May, J., concur.